James D. Wood, St. Bar. No. 106936
Attorney at Law
3675 Mount Diablo Boulevard, Suite 250
Lafayette, California 94549-3775
Tel. (925) 284-9663
Fax. (925) 283-9663
E-mail: jdw@jdwoodlaw.com

Attorney for Debtor Edward S. Ehee

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VIPER CAPITAL MANAGEMENT, LLC, et al.,

Defendants,

and

COMPASS WEST FUND, et al.,

Relief Defendants.

In re:

EDWARD SEWON EHEE, et al.,

Debtors.

No. C 06-06966 SI, 06-7270 SI; 07-3995 SI, 07-3996 SI, and 07-3997 SI

(Formerly: U.S. Bk. Ct. N.D. Cal. Involuntary Chapter 7 Case Nos. 07-40126T, 07-40129T, 07-40130T)

REQUEST FOR ORDER BY DEFAULT GRANTING EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN

**[No Hearing Scheduled]**

(Local Bankruptcy Rule 9014-1(b)(3))

**LIEN HOLDER WHOSE RIGHTS ARE AFFECTED: JOONG M. YANG**

Edward Ehee, as debtor in *In re Ehee*, one of the above-referenced bankruptcy cases ("Debtor" or "Ehee"), hereby submits this REQUEST FOR ORDER BY DEFAULT GRANTING

EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN (the "Motion" and "Default Request"). By the Motion, Ehee has sought an order approving Ehee's proposed sale of his residence subject to the terms and conditions specified therein free and clear of a lien in favor of Joong M. Yang.

**Applicability of "Notice and Opportunity for Hearing Procedure"**

1. As detailed below, this Default Request is brought pursuant to United States District Court N.D. Calif. Bankruptcy Local Rule ("B.L.R.") 9014-1(b)(4)[1]. The Federal Rules of Bankruptcy Procedure and the B.L.R. are applicable by their own terms to all bankruptcy proceedings pending before the District Court. See Fed.R.Bankr.P. 1001 and B.L.R. 1001-1(a).

2. B.L.R. 9014-1(b)(3) delineates a procedure whereby certain types of relief (including orders approving sales of property and sales free and clear of liens) may be sought without the Court having scheduled or conducted a hearing if the movant has first afforded parties in interest notice of the relief requested and an opportunity to request a hearing -- in this context 20 days notice by First Class Mail. As detailed below, Ehee has complied with B.L.R. 9014-1(b)(3) by giving notice to parties in interest. No party has objected or requested a hearing within the 20 day time period. B.L.R. 9014-1(b)(4) specifies the procedure for obtaining relief by default upon expiration of the applicable 20 days. Accordingly Ehee has filed this Default Request in accordance therewith.

**Default Request**

3. Pursuant to B.L.R. 9014-1(b)(4) a true and correct copy of Ehee's notice to parties in interest and related moving papers dated November 6, 2007 listed below ("Moving Papers") is attached hereto as Exhibit A:

---

[1] Part 9 of the B.L.R. including Rule 9014-1 is available at: http://www.canb.uscourts.gov/canb/Documents.nsf/d1b2f9e9e38b74448825671d0066647b/8dd1ef537b735f3f882569bb0083bfb3?OpenDocument.

a.     Edward Ehee's Motion for Order Authorizing Sale of Property Free and Clear of Yang Lien;

b.     Notice and Opportunity for Hearing on Edward Ehee's Motion for Order Authorizing Sale of Property Free and Clear of Yang Lien;

c.     Memorandum of Points and Authorities in Support of Edward Ehee's Motion For order Authorizing Sale of Property Free and Clear of Yang Lien; and

d.     Declaration of Edward Ehee in Support of in Support of Edward Ehee's Motion for Order Authorizing Sale of Property Free and Clear of Yang Lien.

4.     Pursuant to B.L.R. 9014-1(b)(4) a true and correct copy of a certificate evidencing service of the Moving Papers on parties in interest including Joong Yang pursuant to Fed.R.Bankr.P. 6004 and B.L.R. 6004-1 on November 6, 2007 is attached hereto as Exhibit B.

5.     Pursuant to B.L.R. 9014-1(b)(4), this request is supported by the DECLARATION OF JAMES D. WOOD IN SUPPORT OF REQUEST FOR ORDER BY DEFAULT GRANTING EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN filed contemporaneously herewith establishing:

a.     None of the Moving Papers mailed to parties in interest on November 6, 2007 has been returned to Ehee's counsel by the U.S. Postal Service;

b.     The time period for responding to the Moving Papers has expired; and

c.     Ehee's counsel has not received any written request for a hearing or objection to the Motion in response to the Moving Papers.

6.     The Motion combines a request for relief generally against unnamed parties (the request for authority to sell) with relief against a single named party (the request for authority to sell free and clear of the Joong Yang lien). Accordingly, pursuant to B.L.R. 9014-1(b)(4)(A) and (B) this Default Request is being served on Yang and certain, but not necessarily all, of the parties who were served with the Moving Papers on November 6, 2007. An appropriate certificate of service of this Default Request is filed herewith.

7. A proposed form of order is attached hereto as Exhibit C. The undersigned counsel believes the proposed form of order submitted herewith conforms to the guidelines for Sale Orders adopted by the U.S. Bankruptcy Court, N.D. California[2] and substantially tracks the "relief requested" specified in the Moving Papers.

**WHEREFORE**, Ehee respectfully request that the Court enter an order granting the Motion in the form submitted with this Default Request pursuant to B.L.R. 9014-1(b)(4)(C) without holding a hearing.

DATED: November 28, 2007

Respectfully submitted,

/s/ James D. Wood

James D. Wood
Attorney for Debtor, EDWARD S. EHEE

AppDefaultMotionSaleFreeClearAuth071127_01.doc 11/28/07 JDW

[2]Guidelines re Sale Orders, U.S. Bankruptcy Court, N.D. Calif. available at http://www.canb.uscourts.gov/canb/Documents.nsf/4d60469b5bf702148825671d00666477/0ab53fcf12c317598825732b007dd00c?OpenDocument.

# EXHIBIT A

REQ. ORD. BY DEF. MOT. FOR ORDER AUTH. SALE OF
PROP. FREE & CLR., No. C 06-06966 SI

James D. Wood, St. Bar. No. 106936
Attorney at Law
3675 Mount Diablo Boulevard, Suite 250
Lafayette, California 94549-3775
Tel. (925) 284-9663
Fax. (925) 283-9663
E-mail: jdw@jdwoodlaw.com

Attorney for Debtor Edward S. Ehee

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VIPER CAPITAL MANAGEMENT, LLC, et al.,

Defendants,

and

COMPASS WEST FUND, et al.,

Relief Defendants.

In re:

EDWARD SEWON EHEE, et al.,

Debtors.

No. C 06-06966 SI, 06-7270 SI; 07-3995 SI, 07-3996 SI, and 07-3997 SI

(Formerly: U.S. Bk. Ct. N.D. Cal. Involuntary Chapter 7 Case Nos. 07-40126T, 07-40129T, 07-40130T)

EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN

**[No Hearing Scheduled]**

(Local Bankruptcy Rule 9014-1(b)(3))

EHEE'S MOT. FOR ORDER AUTH. SALE OF PROP. FREE AND CLEAR OF YANG LIEN, No. C 06-06966 SI

**LIEN HOLDER WHOSE RIGHTS ARE AFFECTED: JOON M. YANG**

EDWARD SEWON EHEE ("Ehee"), moves as follows:

**RELIEF REQUESTED**

By this Motion Ehee, as debtor in *In re Ehee*, one of the above-referenced bankruptcy cases, requests entry of an order authorizing him to sell that certain real property commonly know as 6122 Acacia Ave., Oakland, California under 11 U.S.C. Sect. 363. The sale shall be made substantially in accordance with the "Residential Purchase Agreement and Joint Escrow Instructions" attached to the declaration of Edward Ehee filed contemporaneously herewith such extensions of closing deadlines as the parties may execute. The sale shall be subject to the following:

1.    The purchase price shall be $1,200,000;

2.    Closing shall occur within 14 days of the entry of the order approving the sale unless both parties agree to an extension of such deadline;

3.    Normal and regular closing costs, except as noted below all liens and encumbrances of record, and real estate commissions shall be paid from escrow;

4.    Proceeds of the sale net of such costs, commissions, and liens shall paid into the registry of the Court;

5.    Ehee shall comply with paragraph IV of the Preliminary Injunction issued by this Court on November 22, 2006;

6.    Ehee shall be authorized to modify the terms of the sale or sell to a different buyer so long as the terms of such sale are not less favorable to the seller than those set-forth above and Ehee otherwise complies with

paragraph IV of the Preliminary Injunction with respect to any such proposed modification or alternative buyer;

7. **The sale shall be made free and clear of the lien created and evidenced by that certain note and deed of trust dated October 27, 2007 in the face amount of $200,000 in favor of Joong M. Yang (the "Yang Lien") pursuant to 11 U.S.C. Sect. 363(f)(2), (f)(3), or (f)(4). The Yang Lien shall attach to the proceeds of sale to be held in trust in the registry of the Court pending further determinations of the Court regarding the validity, amount, and priority of such lien**; and

8. The Court shall waive the 10 day stay of the order approving the sale to the extent otherwise applicable under Fed.R.Bankr.P. 6004(g).

**WHEREFORE,** the Ehee requests that the Court enter an order authorizing the relief requested in this Motion.

Respectfully submitted,

DATED: November 6, 2007

/s/ James D. Wood

James D. Wood
Attorney for EDWARD S. EHEE

MotionSaleFreeClearAuth071105_01.doc 11/6/07 JDW

James D. Wood, St. Bar. No. 106936
Attorney at Law
3675 Mount Diablo Boulevard, Suite 250
Lafayette, California 94549-3775
Tel. (925) 284-9663
Fax. (925) 283-9663
E-mail: jdw@jdwoodlaw.com

Attorney for Debtor Edward S. Ehee

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VIPER CAPITAL MANAGEMENT, LLC, et al.,

Defendants,

and

COMPASS WEST FUND, et al.,

Relief Defendants.

In re:

EDWARD SEWON EHEE, et al.,

Debtors.

No. C 06-06966 SI, 06-7270 SI; 07-3995 SI, 07-3996 SI, and 07-3997 SI

(Formerly: U.S. Bk. Ct. N.D. Cal. Involuntary Chapter 7 Case Nos. 07-40126T, 07-40129T, 07-40130T)

NOTICE AND OPPORTUNITY FOR HEARING ON EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN

**[No Hearing Scheduled]**

(Local Bankruptcy Rule 9014-1(b)(3))

NOT. AND OP. FOR HRG. ON EHEE'S MOT. FOR ORDER AUTH. SALE OF PROP. FREE AND CLR., No. C 06-06966 SI

**LIEN HOLDER WHOSE RIGHTS ARE AFFECTED: JOON M. YANG**

TO JOON M. YANG, CREDITORS AND OTHER PARTIES IN INTEREST:

PLEASE TAKE NOTICE contemporaneously herewith Debtor Edward Ehee has filed and served contemporaneously herewith his:

**"MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN"**

PLEASE TAKE FURTHER NOTICE that, pursuant to Local Rule 9014-1 of the United States Bankruptcy Court for the Northern District of California (applicable to the United States District Court in this bankruptcy case as Bankruptcy Local Rule 9014-1(b)(3) of the United States District Court for the Northern District of California):

**Any objection to the requested relief or request for a hearing thereon must be filed and served upon the moving party at the address listed above within 20 days of mailing of this notice;**

**Any objection must be accompanied by any declarations or memorandum of law the party objecting and requesting hearing wishes to present in support of its position; and**

**IF THERE IS NOT A TIMELY OBJECTION TO THE REQUESTED RELIEF OR A REQUEST FOR HEARING, THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF BY DEFAULT AND WILL NOT CONDUCT A HEARING.**

**Ehee will give at least 10 days written notice of hearing to the objecting or requesting party, and to any trustee or committee appointed in the case, in the event an objection or request for hearing is timely made.**

Respectfully submitted,

DATED: November 6, 2007

/s/ James D. Wood

James D. Wood
Attorney for EDWARD S. EHEE

NOT. AND OP. FOR HRG. ON EHEE'S MOT. FOR ORDER AUTH. SALE OF PROP. FREE AND CLR., No. C 06-06966 SI

-2-

James D. Wood, St. Bar. No. 106936
Attorney at Law
3675 Mount Diablo Boulevard, Suite 250
Lafayette, California 94549-3775
Tel. (925) 284-9663
Fax. (925) 283-9663
E-mail: jdw@jdwoodlaw.com

Attorney for Debtor Edward S. Ehee

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VIPER CAPITAL MANAGEMENT, LLC, et al.,

Defendants,

and

COMPASS WEST FUND, et al.,

Relief Defendants.

In re:

EDWARD SEWON EHEE, et al.,

Debtors.

No. C 06-06966 SI, 06-7270 SI; 07-3995 SI, 07-3996 SI, and 07-3997 SI

(Formerly: U.S. Bk. Ct. N.D. Cal. Involuntary Chapter 7 Case Nos. 07-40126T, 07-40129T, 07-40130T)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN

**[No Hearing Scheduled]**

(Local Bankruptcy Rule 9014-1(b)(3))

MEMO. OF P&A IN SUP. OF EHEE'S MOT. FOR ORDER
AUTH. SALE OF PROP. FREE & CLR., No. C 06-06966 SI

EDWARD SEWON EHEE ("Ehee" or "Debtor"), submits the following memorandum of points and authorities in support of the above-captioned motion (the "Motion"):

## I.    INTRODUCTION

Ehee is seeking to sell his home because if he does not do so, the property will be lost to foreclosure -- a foreclosure sale was stayed in January 2007 by operation of the involuntary bankruptcy case now pending against him. To protect the equity and to preserve the status quo with respect to the various parties' legal rights, Ehee has marketed the property through an independent broker and now proposes to sell the property for $1,200,000 as further detailed below.

Ehee needs this Court's permission to do so because the proposed buyer's title company will not insure title in connection with the purchase without an order authorizing the sale. Ehee also requests that the Court authorize the sale free and clear under 11 U.S.C. Sect. 363(f) of a junior lien on the property created by an apparently third priority deed of trust in favor of Joon M. Yang.

## II.    FACTS

On November 8, 2006, the Securities and Exchange Commission ("SEC") filed an action against Ehee and others alleging violations of the federal securities laws alleging in substance that Ehee made various false representations to securities investors. *Securities & Exchange Commission v. Viper Capital Management, LLC, et al.* (U. S. Dist. Ct. N.D. Cal. Case No. C-06-6966-SI) (the "SEC Action") which is one of the related actions captioned above. On November 22, 2006, this Court entered a stipulated preliminary injunction, thereby extending a prior temporary restraining order, among other things, prohibiting Ehee from disposing of assets except under conditions authorized by the injunction (the "Preliminary Injunction"). Paragraph IV of the Preliminary Injunction contemplates a procedure for the sale of Ehee's real property and for

deposit of the proceeds thereof with the registry of the this Court.  That procedure does not require Ehee to obtain court approval to sell his home.

But, on January 12, 2007[1] Roosevelt Fund, L.P. ("Roosevelt") commenced three involuntary bankruptcy cases, including one against Ehee.  Ehee has denied the substantive allegations against him contained in the SEC Acton and the Roosevelt Action and has opposed the bankruptcy petition against him[2].  No order for relief has been entered in that case.  Upon motion of the SEC, this Court withdrew jurisdiction of the three involuntary bankruptcy cases from the Bankruptcy Court by order entered June 22, 2007.  Hence, this Motion is addressed to the District Court in its capacity as the court exercising jurisdiction over the Ehee involuntary bankruptcy case.

In addition to longstanding senior deeds of trust encumbering the Oakland Property, title Ehee executed a deed of trust in favor of Joong M. Yang in October 2006 in the face amount of $200,000 ("Yang Lien").  He received $188,000 net of fees in respect of the Yang Lien on November 1, 2006.  Ehee and the broker involved have so far been unable to locate any documents relating to the Yang Lien other than the note payable to Yang, the deed of trust itself, and evidence of Ehee's receipt of the $188,000 received by Ehee.  Hence pending further investigation of the Yang Lien including further discussions with Mr. Yang, Ehee tentatively disputes the validity of such lien.

---

[1] On November 22, 2006, Roosevelt had filed an action against Ehee and others asserting various claims under the securities and other laws alleging in substance that it had incurred substantial losses as a result of false representations made by Ehee. *AAG Roosevelt Fund, L.P. v. Edward Sewon Ehee, et al.*, U. S. Dist. Ct. N.D. Cal. Case No. C-06-7270 SI (the "Roosevelt Action") which is also one of the related actions pending before this Court.

[2] Orders for relief have been entered and bankruptcy trustees appointed in the other two involuntary bankruptcy cases.

## III.   RELIEF REQUESTED

As stated in the Motion, Ehee seeks an order authorizing him to sell 6122 Acacia Ave., Oakland, California[3] (the "Oakland Property") under 11 U.S.C. ("Bankruptcy Code") Sect. 363(b) and (f)[4] substantially in accordance with the "Residential Purchase Agreement and Joint Escrow Instructions" attached to the Declaration of Edward Ehee filed contemporaneously herewith subject to such extensions of closing deadlines as the parties may execute.  The sale shall be subject to the following:

1.   The purchase price shall be $1,200,000;

2.   Closing shall occur within 14 days of the entry of the order approving the sale unless both parties agree to an extension of such deadline;

3.   Normal and regular closing costs, except as noted below all liens and encumbrances of record, and real estate commissions shall be paid from escrow;

4.   Proceeds of the sale net of such costs, commissions, and liens shall paid into the registry of the Court;

5.   Ehee shall comply with paragraph IV of the Preliminary Injunction issued by this Court on November 22, 2006;

6.   Ehee shall be authorized to modify the terms of the sale or sell to a different buyer so long as the terms of such sale are not less favorable to the seller than those set-forth above and Ehee otherwise complies with paragraph IV of the Preliminary Injunction with respect to any such proposed modification or alternative buyer;

7.   **The sale shall be made free and clear of the lien created and evidenced by that certain note and deed of trust dated October 27, 2007 in the face amount of $200,000 in favor of Joong M. Yang (the "Yang Lien") pursuant to 11 U.S.C. Sect. 363(f)(2), (f)(3), or (f)(4).  The Yang Lien shall attach to the proceeds of sale to be held in trust in the registry of the Court pending further determinations of the Court regarding the validity, amount, and priority of such lien**; and

---

[3] Record title stands in the name of Ehee but may be subject to an unrecorded community property interest of Ehee's wife.

[4] Extracts from relevant provisions of the Bankruptcy Code and the Fed.R.Bankr.P. are attached hereto as an appendix including Bankruptcy Code Sect. 363.

8. The Court shall waive the 10 day stay of the order approving the sale to the extent otherwise applicable under Fed.R.Bankr.P. 6004(g).

## IV. ARGUMENT

### A. The Court Should Authorize the Sale

Ehee has marketed the Oakland Property with an independent broker and has accepted an offer. The proposed buyer has offered more than any other proposed buyer and is unrelated to Ehee. Ehee has had no prior dealings with the proposed buyer financial or otherwise. Ehee believes that the buyer's offer for $1,200,000 constitutes the best offer obtainable under the circumstances[5]. If the sale is closed and the proceeds transferred to the registry of the Court as contemplated by the Preliminary Injunction and this Motion, the risk of foreclosure will end and the rights of Ehee's creditors will be preserved and protected.

The involuntary petition filed against Ehee under Bankruptcy Code Sect. 303(b) created a bankruptcy estate under Bankruptcy Code Sect. 541(a) which includes "all legal and equitable interests of the debtor in property as of the commencement of the case." Bankruptcy Code Sect. 363 sets forth a general rule in bankruptcy cases that a trustee may not use sell or lease property of the bankruptcy estate out of the ordinary course of business except after notice and opportunity for a hearing. In practice this means that in cases involving the sale of real property, the Bankruptcy Court is almost always requested to sign an order authorizing the proposed sale after notice to creditors due to the requirements of title insurance companies.[6]

Bankruptcy Code Sect. 303(f), provides that until the entry of an order for relief, notwithstanding Bankruptcy Code Sect. 363, a debtor in an involuntary bankruptcy case is permitted to use, acquire, or dispose of property as if no bankruptcy case were pending. But the

[5] Ehee does not intend to oppose a reasonable overbidding procedure sought by any party in interest who believes materially more advantageous bids on the property may be forthcoming.

[6] See, e.g., Guidelines re Sale Orders, U.S. Bankruptcy Court, N.D. Calif. available at http://www.canb.uscourts.gov/canb/Documents.nsf/4d60469b5bf702148825671d00666477/0ab53fcf12c317598825732b007dd00c?OpenDocument

left hand takes away what the right hand gives. Under Bankruptcy Code Sect. 549(a)(2) and (b), subsequent to an order for relief and subject to certain limitations, a trustee may avoid various transactions, "authorized only under section 303(f)". Hence, refusing to rest upon the limited buyer protections contained in Bankruptcy Code Sect. 549(a)(2) and (b), the buyer's title insurance company has insisted upon Ehee obtaining an order authorizing the proposed sale under Bankruptcy Code Sect. 363[7].

Fed.R.Bankr.P. 6004 governs the procedure for the sale of property out of the ordinary course of business. It provides for 20 days notice to all creditors and to the U.S. Trustee. This motion is being served on all creditors who have been publicly identified or otherwise appeared in the case to date. Rule 6004(g) provides for an automatic 10 day stay of an order authorizing the sale of property out of the ordinary course unless waived by the Court. Ehee requests that the Court waive the stay in view of the importance of closing the transaction as soon as possible and the risk that the buyer will be unable to close if the transaction is delayed.

**B. Sale Free and Clear of Yang Lien**

Bankruptcy Code Sect. 363(f) authorizes the Court to order the sale of property free and clear of the liens in specific circumstances notably where the lien is in dispute:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> * * *
>
> (2) such entity consents;
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> (4) such interest is in bona fide dispute

Here the Yang Lien is in bona fide dispute because of questions arising from the absence of documentation available to Ehee establishing whether the Yang loan complies with applicable truth in lending and similar state-law borrower protections. To ensure that the property is sold

[7] Section 363 describes the powers normally exercised by a trustee (which includes a debtor in possession in chapter 11 reorganization proceedings). This motion presumes that Sect. 363

without delay while simultaneously preserving all parties rights, Ehee has proposed a sale free and clear of Yang's interest under Sect. 363(f). Ehee contemplates that the Yang's lien will attach to the proceeds held in the Court's registry to be disbursed upon further order of the Court after the parties have been afforded a further opportunity to investigate and resolve the issues.

Hence, this is precisely the situation contemplated for the proper application of Sect. 363(f).

**V. CONCLUSION**

Ehee requests that the Court enter its order authorizing the relief as described above.

Respectfully submitted,

DATED: November 6, 2007

/s/ James D. Wood

James D. Wood
Attorney for EDWARD S. EHEE

powers are exercisable in this involuntary case prior to an order for relief where there is no trustee by the debtor whose position is analogous in this respect to a chapter 11 debtor in possession.

**APPENDIX**
**(SELECTED STATUTES & RULES)**

**U.S. Bankruptcy Code:**

**Sect. 303(b):**

An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title . . .

**Sect. 303(f):**

Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced.

**Sect. 363(b)(1):**

The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . .

**Sect. 363(f):**

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
(2) such entity consents;
(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
(4) such interest is in bona fide dispute; or
(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

**Sect. 541(a):**

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held: (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case . . ."

**Sect. 549(a) and (b):**

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and
(2)
(A) that is authorized only under section 303 (f) or 542 (c) of this title; or
(B) that is not authorized under this title or by the court.

(b) In an involuntary case, the trustee may not avoid under subsection (a) of this section a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

**Fed.R.Bankr.P. 2002:**

(a) Twenty-day notices to parties in interest.

Except as provided in subdivisions (h), (i), and (l) of this rule, the clerk, or some other person as the court may direct, shall give the debtor, the trustee, all creditors and indenture trustees at least 20 days' notice by mail of:

* * * *

(2) a proposed use, sale, or lease of property of the estate other than in the ordinary course of business, unless the court for cause shown shortens the time or directs another method of giving notice;

* * * *

(c) Content of notice.

(1) Proposed use, sale, or lease of property. Subject to Rule 6004 the notice of a proposed use, sale, or lease of property required by subdivision (a)(2) of this rule shall include the time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections. The notice of a proposed use, sale, or lease of property, including real estate, is sufficient if it generally describes the property.

**Fed.R.Bankr.P. 6004:**

(a) Notice of proposed use, sale, or lease of property.

Notice of a proposed use, sale, or lease of property, other than cash collateral, not in the ordinary course of business shall be given pursuant to Rule 2002(a)(2), (c)(1), (i), and (k) and, if applicable, in accordance with § 363(b)(2) of the Code.

(b) Objection to proposal.

Except as provided in subdivisions (c) and (d) of this rule, an objection to a proposed use, sale, or lease of property shall be filed and served not less than five days before the date set for the proposed action or within the time fixed by the court. An objection to the proposed use, sale, or lease of property is governed by Rule 9014.

* * * **

(g) Stay of order authorizing use, sale, or lease of property.

An order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise.

MemoP&AMotionSaleAuth071105_01.doc 11/6/07 JDW

James D. Wood, St. Bar. No. 106936
Attorney at Law
3675 Mount Diablo Boulevard, Suite 250
Lafayette, California 94549-3775
Tel. (925) 284-9663
Fax. (925) 283-9663
E-mail: jdw@jdwoodlaw.com

Attorney for Debtor Edward S. Ehee

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VIPER CAPITAL MANAGEMENT, LLC, et al.,

Defendants,

and

COMPASS WEST FUND, et al.,

Relief Defendants.

In re:

EDWARD SEWON EHEE, et al.,

Debtors.

No. C 06-06966 SI and 06-7270 SI; 07-3995 SI, 07-3996 SI, and 07-3997 SI

(Formerly: U.S. Bk. Ct. N.D. Cal. Involuntary Chapter 7 Case Nos. 07-40126T, 07-40129T, 07-40130T)

DECLARATION OF EDWARD EHEE IN SUPPORT OF IN SUPPORT OF EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN

**[No Hearing Scheduled]**

(Local Bankruptcy Rule 9014-1(b)(3))

EDWARD SEWON EHEE declares:

1. I am the debtor in one of the above-captioned bankruptcy cases.

EHEE DEC. IN SUPP. OF EHEE'S MOT. FOR ORDER
AUTH. SALE OF PROP. FREE OF LIEN, No. C 06-06966 SI

2.      I am the record owner of 6122 Acacia Ave., Oakland, California subject to any unrecorded community property interest of my wife Jennifer Ehee, if any.

3.      I have marketed the property through Bay Properties a licensed real estate broker. I have no other connection with Bay Properties or its agents.

4.      I have accepted and am seeking approval for the sale contemplated by the "Residential Purchase Agreement and Joint Escrow Instructions" dated 10/28/07 attached hereto as Exhibit A.

5.      The proposed buyer has offered a higher price than any other proposed buyer and is unrelated to me.

6.      I have had no prior or other dealings with the proposed buyer whether financial or otherwise.

7.      I believe that the buyer's offer constitutes the best offer obtainable although I do not intend to oppose any reasonable overbidding procedure that may be imposed by the Court.

8.      In or about October 27,  2006 I executed the promissory note and deed of trust attached hereto as Exhibits B and C respectively and received $188,000 net of fees in respect of such loan on October 31, 2006.  I do not posses and do not recall receiving any written documents in respect of that loan other than Exhibits B and C.

////

9. By executing this declaration, I do not waive and expressly assert and preserve all rights, claims, and privileges under the United States Constitution relating to statements or testimony that may tend to incriminate me.

I declare that the foregoing is true under penalty of perjury under the laws of the United States.

Executed on November 5, 2007.

/s/ Edward S. Ehee

Edward S. Ehee

EXHIBIT A

FROM : FAX NO. : Jan. 01 2004 10:53AM P2

10/29/2007 06:14 4153712640 WELLS FARGO PAGE 04/13

PAGE 04

ALAN MARKS APR

10/29/2007 17:05 9252581129

CALIFORNIA ASSOCIATION OF REALTORS®

# CALIFORNIA RESIDENTIAL PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

For Use With Single Family Residential Property — Attached or Detached (C.A.R. Form RPA-CA, Revised 1/06)

Date October 29, 2007, at Oakland, California.

1. OFFER:
   A. THIS IS AN OFFER FROM Lloyd Hendrickson, Shelly Hendrickson ("Buyer").
   B. THE REAL PROPERTY TO BE ACQUIRED is described as 6128 Acacia, Oakland CA 94618, situated in Oakland, County of Alameda, California, ("Property"), Assessor's Parcel No. 048A-7107-021-03.
   C. THE PURCHASE PRICE offered is One Million Two Hundred Thousand Dollars $ 1,200,000.00.
   D. CLOSE OF ESCROW shall occur on (date) (or ☒ 30 Days After Acceptance).
2. FINANCE TERMS: Obtaining the loans below is a contingency of this Agreement unless: (i) either 2K or 2L is checked below; or (ii) otherwise agreed in writing. Buyer shall act diligently and in good faith to obtain the designated loans. Obtaining deposit, down payment and closing costs is not a contingency. Buyer represents that funds will be good when deposited with Escrow Holder.
   A. INITIAL DEPOSIT: Buyer has given a deposit in the amount of . . . . . $ 36,000.00 to the agent submitting the offer (or to ☐ ), by personal check (or ☐ ), made payable to which shall be held uncashed until Acceptance and then deposited within 3 business days after Acceptance (or ☒ To be directly wired to Escrow ), with Escrow Holder, (or ☐ into Broker's trust account).
   B. INCREASED DEPOSIT: Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . . . $ 314,000.00 within ___ Days After Acceptance, or ☐
   C. FIRST LOAN IN THE AMOUNT OF . . . . . $
      (1) NEW First Deed of Trust in favor of lender, encumbering the Property, securing a note payable at maximum interest of 6.500 % fixed rate, or 6.500 % initial adjustable rate with a maximum interest rate of 6.500 %, balance due in 30 years, amortized over 30 years. Buyer shall pay loan fees/points not to exceed One. (These terms apply whether the designated loan is conventional, FHA or VA.)
      (2) ☐ FHA ☐ VA: (The following terms only apply to the FHA or VA loan that is checked.) Seller shall pay ___ % discount points. Seller shall pay other fees not allowed to be paid by Buyer, ☐ not to exceed $ ___. Seller shall pay the cost of lender required Repairs (including those for wood destroying pest) not otherwise provided for in this Agreement, ☐ not to exceed $ ___. (Actual loan amount may increase if mortgage insurance premiums, funding fees or closing costs are financed.)
   D. ADDITIONAL FINANCING TERMS: ☐ Seller financing, (C.A.R. Form SFA); ☐ secondary financing, . . . . . $ (C.A.R. Form PAA, paragraph 4A); ☐ assumed financing (C.A.R. Form PAA, paragraph 4B) NO FINANCING CONTINGENCY - BUYERS ARE PRE-APPROVED
   E. BALANCE OF PURCHASE PRICE (not including costs of obtaining loans and other closing costs) in the amount of . . $ 850,000.00 to be deposited with Escrow Holder within sufficient time to close escrow.
   F. PURCHASE PRICE (TOTAL): . . . . . $ 1,200,000.00
   G. LOAN APPLICATIONS: Within 7 (or ☐ ___) Days After Acceptance, Buyer shall provide Seller a letter from lender or mortgage loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for the NEW loan specified in 2C above.
   H. VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS: Buyer (or Buyer's lender or loan broker pursuant to 2G) shall, within 7 (or ☐ ___) Days After Acceptance, provide Seller written verification of Buyer's down payment and closing costs.
   I. LOAN CONTINGENCY REMOVAL: (i) Within 17 (or ☐ ___) Days After Acceptance, Buyer shall, as specified in paragraph 14, remove the loan contingency or cancel this Agreement; OR (ii) (if checked) ☐ the loan contingency shall remain in effect until the designated loans are funded.
   J. APPRAISAL CONTINGENCY AND REMOVAL: This Agreement is (OR, if checked, ☐ is NOT) contingent upon the Property appraising at no less than the specified purchase price. If there is a loan contingency, at the time the loan contingency is removed (or, if checked, ☐ within 17 (or ___) Days After Acceptance), Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency or cancel this Agreement. If there is no loan contingency, Buyer shall, as specified in paragraph 14B(3), remove the appraisal contingency within 17 (or 16) Days After Acceptance.
   K. ☒ NO LOAN CONTINGENCY (If checked): Obtaining any loan in paragraphs 2C, 2D or elsewhere in this Agreement is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
   L. ☐ ALL CASH OFFER (If checked): No loan is needed to purchase the Property. Buyer shall, within 7 (or ☐ ___) Days After Acceptance, provide Seller written verification of sufficient funds to close this transaction.
3. CLOSING AND OCCUPANCY:
   A. Buyer intends (or ☐ does not intend) to occupy the Property as Buyer's primary residence.
   B. Seller-occupied or vacant property: Occupancy shall be delivered to Buyer at 6:00 ☐ AM ☒ PM, ☒ on the date of Close Of Escrow; ☐ on ___; or ☐ no later than ___ Days After Close Of Escrow. (C.A.R. Form PAA, paragraph 2.) If transfer of title and occupancy do not occur at the same time, Buyer and Seller are advised to: (i) enter into a written occupancy agreement; and (ii) consult with their insurance and legal advisors.

Buyer's Initials ( [signature] ) ( [signature] )
Seller's Initials ( ___ ) ( ___ )

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

Reviewed by ___ Date ___

Agent: Alan Marks Phone: (925)2581111 Fax: (925)2538380 Prepared using WINForms® software
Broker: Alain Pinel Realtors 2 Theatre Square #215, Orinda CA 94563

Property Address: 6122 Acacia Oakland, CA 94618 Date: October 28, 2007

C. Tenant-occupied property: (i) Property shall be vacant at least 5 (or ☐ ____ ) Days Prior to Close Of Escrow, unless otherwise agreed in writing. Note to Seller: If you are unable to deliver Property vacant in accordance with rent control and other applicable Law, you may be in breach of this Agreement.

OR (ii) (if checked) ☐ Tenant to remain in possession. The attached addendum is incorporated into this Agreement (C.A.R. Form PAA, paragraph 3.);

OR (iii) (if checked) ☐ This Agreement is contingent upon Buyer and Seller entering into a written agreement regarding occupancy of the Property within the time specified in paragraph 14B(1). If no written agreement is reached within this time, either Buyer or Seller may cancel this Agreement in writing.

D. At Close Of Escrow, Seller assigns to Buyer any assignable warranty rights for items included in the sale and shall provide any available Copies of such warranties. Brokers cannot and will not determine the assignability of any warranties.

E. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys and/or means to operate all locks, mailboxes, security systems, alarms and garage door openers. If Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

4. ALLOCATION OF COSTS (If checked): Unless otherwise specified here, this paragraph only determines who is to pay for the report, inspection, test or service mentioned. If not specified here or elsewhere in this Agreement, the determination of who is to pay for any work recommended or identified by any such report, inspection, test or service shall be by the method specified in paragraph 14B(2).

A. WOOD DESTROYING PEST INSPECTION:

(1) ☐ Buyer ☒ Seller shall pay for an inspection and report for wood destroying pests and organisms ("Report") which shall be prepared by ____, a registered structural pest control company. The Report shall cover the accessible areas of the main building and attached structures and, if checked: ☐ detached garages and carports, ☐ detached decks, ☐ the following other structures or areas FRONT PORCH AREA ____. The Report shall not include roof coverings. If Property is a condominium or located in a common interest subdivision, the Report shall include only the separate interest and any exclusive-use areas being transferred and shall not include common areas, unless otherwise agreed. Water tests of shower pans on upper level units may not be performed without consent of the owners of property below the shower.

OR (2) ☐ (If checked) The attached addendum (C.A.R. Form WPA) regarding wood destroying pest inspection and allocation of cost is incorporated into this Agreement.

B. OTHER INSPECTIONS AND REPORTS:

(1) ☐ Buyer ☐ Seller shall pay to have septic or private sewage disposal systems inspected ____

(2) ☐ Buyer ☐ Seller shall pay to have domestic wells tested for water potability and productivity ____

(3) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report prepared by JCP plus Buyer and Seller

(4) ☐ Buyer ☐ Seller shall pay for the following inspection or report ____

(5) ☐ Buyer ☐ Seller shall pay for the following inspection or report ____

C. GOVERNMENT REQUIREMENTS AND RETROFIT:

(1) ☐ Buyer ☒ Seller shall pay for smoke detector installation and/or water heater bracing, if required by Law. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance in accordance with state and local Law, unless exempt.

(2) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing escrow under any Law. ____

D. ESCROW AND TITLE:

(1) ☒ Buyer ☐ Seller shall pay escrow fee ____
Escrow Holder shall be Buyer's Choice

(2) ☒ Buyer ☐ Seller shall pay for owner's title insurance policy specified in paragraph 12E ____
Owner's title policy to be issued by Buyers Choice
(Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

E. OTHER COSTS:

(1) ☐ Buyer ☒ Seller shall pay County transfer tax or transfer fee ____

(2) ☒ Buyer ☒ Seller shall pay City transfer tax or transfer fee Split 50/50

(3) ☐ Buyer ☐ Seller shall pay HOA transfer fee ____

(4) ☐ Buyer ☐ Seller shall pay HOA document preparation fees ____

(5) ☐ Buyer ☒ Seller shall pay the cost, not to exceed $ 400.00 ____, of a one-year home warranty plan, issued by Fidelity ____, with the following optional coverage: Comprehensive Plus

(6) ☐ Buyer ☐ Seller shall pay for ____

(7) ☐ Buyer ☐ Seller shall pay for ____

5. STATUTORY DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:

A. (1) Seller shall, within the time specified in paragraph 14A, deliver to Buyer, if required by Law: (i) Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"); and (ii) disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the California Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act and Improvement Bond Act of 1915) and, if Seller has actual knowledge, an industrial use and military ordinance location disclosure (C.A.R. Form SSD).

(2) Buyer shall, within the time specified in paragraph 14B(1), return Signed Copies of the Statutory and Lead Disclosures to Seller.

(3) In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

Buyer's Initials ( ____ ) ( ____ )
Seller's Initials ( ____ ) ( ____ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ____ Date ____

Property Address: 8122 Acacia Oakland, CA 94618 Date: October 28, 2007

(4) If any disclosure or notice specified in 5A(1), or subsequent or amended disclosure or notice is delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within 3 Days After delivery in person, or 5 Days After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

(5) Note to Buyer and Seller: Waiver of Statutory and Lead Disclosures is prohibited by Law.

B. NATURAL AND ENVIRONMENTAL HAZARDS: Within the time specified in paragraph 14A, Seller shall, if required by Law: (i) deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; (ii) even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.

C. DATA BASE DISCLOSURE: Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

6. CONDOMINIUM/PLANNED UNIT DEVELOPMENT DISCLOSURES:

A. SELLER HAS: 7 (or ☐ __________) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned unit development or other common interest subdivision (C.A.R. Form SSD).

B. If the Property is a condominium or is located in a planned unit development or other common interest subdivision, Seller has 3 (or ☐ ______) Days After Acceptance to request from the HOA (C.A.R. Form HOA): (i) Copies of any documents required by Law; (ii) disclosure of any pending or anticipated claim or litigation by or against the HOA; (iii) a statement containing the location and number of designated parking and storage spaces; (iv) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 14B(3).

7. CONDITIONS AFFECTING PROPERTY:

A. Unless otherwise agreed: (i) the Property is sold (a) in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.

B. SELLER SHALL, within the time specified in paragraph 14A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, AND MAKE OTHER DISCLOSURES REQUIRED BY LAW (C.A.R. Form SSD).

C. NOTE TO BUYER: You are strongly advised to conduct investigations of the entire Property in order to determine its present condition since Seller may not be aware of all defects affecting the Property or other factors that you consider important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

D. NOTE TO SELLER: Buyer has the right to inspect the Property and, as specified in paragraph 14B, based upon information discovered in those inspections: (i) cancel this Agreement; or (ii) request that you make Repairs or take other action.

8. ITEMS INCLUDED AND EXCLUDED:

A. NOTE TO BUYER AND SELLER: Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 8B or C.

B. ITEMS INCLUDED IN SALE:

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) Existing electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, private integrated telephone systems, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water softeners, water purifiers, security systems/alarms; and

(3) The following items: ____________________

(4) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.

(5) All items included shall be transferred free of liens and without Seller warranty.

C. ITEMS EXCLUDED FROM SALE: ____________________

9. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:

A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 14B. Within the time specified in paragraph 14B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer investigations; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.

B. Buyer shall complete Buyer Investigations and, as specified in paragraph 14B, remove the contingency or cancel this Agreement. Buyer shall give Seller, at no cost, complete Copies of all Buyer Investigation reports obtained by Buyer. Seller shall make the Property available for all Buyer Investigations. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.

Buyer's Initials ( [signature] ) ( [signature] )
Seller's Initials ( ______ ) ( ______ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ________ Date ________

Property Address: 6122 Acacia Oakland, CA 94510 Date: October 28, 2007

10. REPAIRS: Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of receipts and statements to Buyer prior to final verification of condition.

11. BUYER INDEMNITY AND SELLER PROTECTION FOR ENTRY UPON PROPERTY: Buyer shall: (i) keep the Property free and clear of liens; (ii) Repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

12. TITLE AND VESTING:

A. Within the time specified in paragraph 14, Buyer shall be provided a current preliminary (title) report, which is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the preliminary report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 14B.

B. Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except: (i) monetary liens of record unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

C. Within the time specified in paragraph 14A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

D. At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

E. Buyer shall receive a CLTA/ALTA Homeowner's Policy of Title Insurance. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and pay any increase in cost.

13. SALE OF BUYER'S PROPERTY:

A. This Agreement is NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ (If checked): The attached addendum (C.A.R. Form COP) regarding the contingency for the sale of property owned by Buyer is incorporated into this Agreement.

14. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph must be in writing (C.A.R. Form CR).

A. SELLER HAS: 7 (or ☐ ________) Days After Acceptance to deliver to Buyer all reports, disclosures and information for which Seller is responsible under paragraphs 4, 5A and B, 6A, 7B and 12.

B. (1) BUYER HAS: 17 (or ☐ 14) Days After Acceptance, unless otherwise agreed in writing, to:
(i) complete all Buyer Investigations; approve all disclosures, reports and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property (including lead-based paint and lead-based paint hazards as well as other information specified in paragraph 5 and insurability of Buyer and the Property); and
(ii) return to Seller Signed Copies of Statutory and Lead Disclosures delivered by Seller in accordance with paragraph 5A.

(2) Within the time specified in 14B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to Buyer's requests.

(3) By the end of the time specified in 14B(1) (or 2I for loan contingency or 2J for appraisal contingency), Buyer shall, in writing, remove the applicable contingency (C.A.R. Form CR) or cancel this Agreement. However, if (i) government-mandated inspections/ reports required as a condition of closing; or (ii) Common Interest Disclosures pursuant to paragraph 6B are not made within the time specified in 14A, then Buyer has 5 (or ☐ ________) Days After receipt of any such items, or the time specified in 14B(1), whichever is later, to remove the applicable contingency or cancel this Agreement in writing.

C. CONTINUATION OF CONTINGENCY OR CONTRACTUAL OBLIGATION; SELLER RIGHT TO CANCEL:

(1) Seller right to Cancel; Buyer Contingencies: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit if, by the time specified in this Agreement, Buyer does not remove in writing the applicable contingency or cancel this Agreement. Once all contingencies have been removed, failure of either Buyer or Seller to close escrow on time may be a breach of this Agreement.

(2) Continuation of Contingency: Even after the expiration of the time specified in 14B, Buyer retains the right to make requests to Seller, remove in writing the applicable contingency or cancel this Agreement until Seller cancels pursuant to 14C(1). Once Seller receives Buyer's written removal of all contingencies, Seller may not cancel this Agreement pursuant to 14C(1).

(3) Seller right to Cancel; Buyer Contract Obligations: Seller, after first giving Buyer a Notice to Buyer to Perform (as specified below), may cancel this Agreement in writing and authorize return of Buyer's deposit for any of the following reasons: (i) if Buyer fails to deposit funds as required by 2A or 2B; (ii) if the funds deposited pursuant to 2A or 2B are not good when deposited; (iii) if Buyer fails to provide a letter as required by 2G; (iv) if Buyer fails to provide verification as required by 2H or 2L; (v) if Seller reasonably disapproves of the verification provided by 2H or 2L; (vi) if Buyer fails to return Statutory and Lead Disclosures as required by paragraph 5A(2); or (vii) if Buyer fails to sign or initial a separate liquidated damage form for an increased deposit as required by paragraph 16. Seller is not required to give Buyer a Notice to Perform regarding Close of Escrow.

(4) Notice To Buyer To Perform: The Notice to Buyer to Perform (C.A.R. Form NBP) shall: (i) be in writing; (ii) be signed by Seller; and (iii) give Buyer at least 24 (or ☐ ________) hours (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A Notice to Buyer to Perform may not be given any earlier than 2 Days Prior to the expiration of the applicable time for Buyer to remove a contingency or cancel this Agreement or meet a 14C(3) obligation.

Buyer's Initials ( [signature] ) ( [signature] )
Seller's Initials ( [signature] ) ( )

Reviewed by ________ Date ________

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: 6122 Acacia Oakland, CA 94618 Date: October 26, 2007

D. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES: If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for inability to obtain financing.

E. EFFECT OF CANCELLATION ON DEPOSITS: If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, Buyer and Seller agree to Sign mutual instructions to cancel the sale and escrow and release deposits to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Release of funds will require mutual Signed release instructions from Buyer and Seller, judicial decision or arbitration award. A party may be subject to a civil penalty of up to $1,000 for refusal to sign such instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

15. FINAL VERIFICATION OF CONDITION: Buyer shall have the right to make a final inspection of the Property within 5 (or ________ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 7A; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement.

16. **LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award.**

**BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION FOR ANY INCREASED DEPOSIT. (C.A.R. FORM RID)**

Buyer's Initials ______ / ______ Seller's Initials ______ / ______

17. DISPUTE RESOLUTION:

A. MEDIATION: Buyer and Seller agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action. Paragraphs 17B(2) and (3) below apply to mediation whether or not the Arbitration provision is initialed. Mediation fees, if any, shall be divided equally among the parties involved. If, for any dispute or claim to which this paragraph applies, any party commences an action without first attempting to resolve the matter through mediation, or refuses to mediate after a request has been made, then that party shall not be entitled to recover attorney fees, even if they would otherwise be available to that party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED.

B. **ARBITRATION OF DISPUTES: (1) Buyer and Seller agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration, including and subject to paragraphs 17B(2) and (3) below. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of residential real estate Law experience, unless the parties mutually agree to a different arbitrator, who shall render an award in accordance with substantive California Law. The parties shall have the right to discovery in accordance with California Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part III of the California Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Interpretation of this agreement to arbitrate shall be governed by the Federal Arbitration Act.**

(2) EXCLUSIONS FROM MEDIATION AND ARBITRATION: The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in California Civil Code §2985; (ii) an unlawful detainer action; (iii) the filing or enforcement of a mechanic's lien; and (iv) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court. The filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies, shall not constitute a waiver of the mediation and arbitration provisions.

(3) BROKERS: Buyer and Seller agree to mediate and arbitrate disputes or claims involving either or both Brokers, consistent with 17A and B, provided either or both Brokers shall have agreed to such mediation or arbitration prior to, or within a reasonable time after, the dispute or claim is presented to Brokers. Any election by either or both Brokers to participate in mediation or arbitration shall not result in Brokers being deemed parties to the Agreement.

**"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."**

**"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."**

Buyer's Initials ______ / ______ Seller's Initials ______ / ______

Buyer's Initials ( ______ ) ( ______ )
Seller's Initials ( ______ ) ( ______ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ________ Date ________

Property Address: 6122 Acacia Oakland, CA 94618 Date: October 28, 2007

18. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller. TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

19. **WITHHOLDING TAXES:** Seller and Buyer agree to execute any instrument, affidavit, statement or instruction reasonably necessary to comply with federal (FIRPTA) and California withholding Law, if required (C.A.R. Forms AS and AB).

20. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the terms of this transaction to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

21. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

22. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 17A.

23. **SELECTION OF SERVICE PROVIDERS:** If Brokers refer Buyer or Seller to persons, vendors, or service or product providers ("Providers"), Brokers do not guarantee the performance of any Providers. Buyer and Seller may select ANY Providers of their own choosing.

24. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the parties are incorporated in this Agreement. Its terms are intended by the parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.

25. **OTHER TERMS AND CONDITIONS**, including attached supplements:
A. ☑ Buyer's Inspection Advisory (C.A.R. Form BIA)
B. ☐ Purchase Agreement Addendum (C.A.R. Form PAA paragraph numbers: )
C. ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA)
D. *Seller to cooperate with Buyer and no cost to Seller regarding Buyer's relocation [illegible] Buyer's potential transfer of their San Diego tax basis to Alameda County.*

26. **DEFINITIONS:** As used in this Agreement:
A. "Acceptance" means the time the offer or final counter offer is accepted in writing by a party and is delivered to and personally received by the other party or that party's authorized agent in accordance with the terms of this offer or a final counter offer.
B. "Agreement" means the terms and conditions of this accepted California Residential Purchase Agreement and any accepted counter offers and addenda.
C. "C.A.R. Form" means the specific form referenced or another comparable form agreed to by the parties.
D. "Close Of Escrow" means the date the grant deed, or other evidence of transfer of title, is recorded. If the scheduled close of escrow falls on a Saturday, Sunday or legal holiday, then close of escrow shall be the next business day after the scheduled close of escrow date.
E. "Copy" means copy by any means including photocopy, NCR, facsimile and electronic.
F. "Days" means calendar days, unless otherwise required by Law.
G. "Days After" means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59PM on the final day.
H. "Days Prior" means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
I. "Electronic Copy" or "Electronic Signature" means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other.
J. "Law" means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
K. "Notice to Buyer to Perform" means a document (C.A.R. Form NBP), which shall be in writing and Signed by Seller and shall give Buyer at least 24 hours (or as otherwise specified in paragraph 14C(4)) to remove a contingency or perform as applicable.
L. "Repairs" means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
M. "Signed" means either a handwritten or electronic signature on an original document, Copy or any counterpart.
N. Singular and Plural terms each include the other, when appropriate.

Buyer's Initials ( ) ( )
Seller's Initials ( ) ( )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ______ Date ______

6122 Acacia

Property Address: 6122 Acacia Oakland, CA 94618 Date: October 28, 2007

27. AGENCY:

A. DISCLOSURE: Buyer and Seller each acknowledge prior receipt of C.A.R. Form AD "Disclosure Regarding Real Estate Agency Relationships."

B. POTENTIALLY COMPETING BUYERS AND SELLERS: Buyer and Seller each acknowledge receipt of a disclosure of the possibility of multiple representation by the Broker representing that principal. This disclosure may be part of a listing agreement, buyer-broker agreement or separate document (C.A.R. Form DA). Buyer understands that Broker representing Buyer may also represent other potential buyers, who may consider, make offers on or ultimately acquire the Property. Seller understands that Broker representing Seller may also represent other sellers with competing properties of interest to this Buyer.

C. CONFIRMATION: The following agency relationships are hereby confirmed for this transaction: Listing Agent Bay Properties (Print Firm Name) is the agent of (check one): ☒ the Seller exclusively; or ☐ both the Buyer and Seller. Selling Agent Alain Pinel Realtors (Print Firm Name) (if not same as Listing Agent) is the agent of (check one): ☒ the Buyer exclusively; or ☐ the Seller exclusively; or ☐ both the Buyer and Seller. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.

28. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:

A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: 1, 2, 4, 12, 13B, 14E, 18, 19, 24, 25B and 25D, 26, 28, 29, 32A, 33 and paragraph D of the section titled Real Estate Brokers on page 8. If a Copy of the separate compensation agreement(s) provided for in paragraph 29 or 32A, or paragraph D of the section titled Real Estate Brokers on page 8 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions directly from Escrow Holder and will execute such provisions upon Escrow Holder's request. To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow.

B. A Copy of this Agreement shall be delivered to Escrow Holder within 3 business days after Acceptance (or ☐ ______________). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement.

C. Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraphs 29, 32A and paragraph D of the section titled Real Estate Brokers on page 8. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraphs 29 and 32A, respectively, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Escrow Holder shall immediately notify Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder, or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

D. A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 2 business days after mutual execution of the amendment.

29. BROKER COMPENSATION FROM BUYER: If applicable, upon Close Of Escrow, Buyer agrees to pay compensation to Broker as specified in a separate written agreement between Buyer and Broker.

30. TERMS AND CONDITIONS OF OFFER:

This is an offer to purchase the Property on the above terms and conditions. All paragraphs with spaces for initials by Buyer and Seller are incorporated in this Agreement only if initialed by all parties. If at least one but not all parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the above confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

Buyer's Initials ( ______ ) ( ______ )
Seller's Initials ( ______ ) ( ______ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Property Address: 6122 Acacia Oakland, CA 94618 Date: October 28, 2007

31. EXPIRATION OF OFFER: This offer shall be deemed revoked and the deposit shall be returned unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by ______, who is authorized to receive it by 5:00 PM on the third Day after this offer is signed by Buyer (or, if checked, ☐ by October 28, 2007 (date), at 5:00 ☐ AM/☒ PM).

Date October 28, 2007 Date October 28, 2007
BUYER [signature] BUYER [signature]
Lloyd Mendenhall (Print name) Shelly Mendenhall (Print name)
(Address)

32. BROKER COMPENSATION FROM SELLER:
A. Upon Close Of Escrow, Seller agrees to pay compensation to Broker as specified in a separate written agreement between Seller and Broker.
B. If escrow does not close, compensation is payable as specified in that separate written agreement.

33. ACCEPTANCE OF OFFER: Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer, agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to deliver a Signed Copy to Buyer.
☐ (If checked) SUBJECT TO ATTACHED COUNTER OFFER, DATED ______

Date 10/29/07 Date ______
SELLER [signature] SELLER ______
(Print name) (Print name)
(Address)

(____/____) CONFIRMATION OF ACCEPTANCE: A Copy of Signed Acceptance was personally received by Buyer or Buyer's authorized agent on (date) ______ at ______ ☐ AM ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.
(Initials)

REAL ESTATE BROKERS:
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 27.
C. If specified in paragraph 2A, Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. COOPERATING BROKER COMPENSATION: Listing Broker agrees to pay Cooperating Broker (Selling Firm) and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow: (i) the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS; or (ii) ☐ (if checked) the amount specified in a separate written agreement (C.A.R. Form CBC) between Listing Broker and Cooperating Broker.

Real Estate Broker (Selling Firm) Alain Pinel Realtors DRE Lic. # ______
By [signature] Alan Marks DRE Lic. # ______ Date October 28, 2007
Address 2 Theatre Square, Suite 215 City Orinda State ______ Zip ______
Telephone (925)258-9000 Fax (925)258-1129 E-mail AlanMarks@[illegible].com

Real Estate Broker (Listing Firm) Bay Properties DRE Lic. # ______
By ______ John Lee DRE Lic. # ______ Date October 28, 2007
Address ______ City ______ State ______ Zip ______
Telephone (510)435-8499 Fax (510)350-8886 E-mail bayrei60@yahoo.com

ESCROW HOLDER ACKNOWLEDGMENT:
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $______), counter offer numbers ______ and ______, and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is ______

Escrow Holder [illegible] Escrow # ______
By ______ Date ______
Address ______
Phone/Fax/E-mail ______
Escrow Holder is licensed by the California Department of ☐ Corporations, ☐ Insurance, ☐ Real Estate. License # ______

(____/____) REJECTION OF OFFER: No counter offer is being made. This offer was reviewed and rejected by Seller on ______ (Date)
(Seller's Initials)

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ______ Date ______

FROM : FAX NO. : Jan. 01 2004 11:01AM P10

10/29/2007 05:14 4153712640 WELLS FARGO PAGE 12/13

10/28/2007 17:05 9252581129 ALAN MARKS APR PAGE 12

CALIFORNIA ASSOCIATION OF REALTORS®

# BUYER'S INSPECTION ADVISORY

**(C.A.R. Form BIA-A, Revised 10/02)**

Property Address: 6122 Acacia, Oakland CA 94618 ("Property").

**A. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. For this reason, you should conduct thorough investigations of the Property personally and with professionals who should provide written reports of their investigations. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**B. BUYER RIGHTS AND DUTIES:** You have an ***affirmative duty to exercise reasonable care*** to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. The purchase agreement gives you the right to investigate the Property. If you exercise this right, and you should, you must do so in accordance with the terms of that agreement. This is the best way for you to protect yourself. It is extremely important for you to read all written reports provided by professionals and to discuss the results of inspections with the professional who conducted the inspection. You have the right to request that Seller make repairs, corrections or take other action based upon items discovered in your investigations or disclosed by Seller. If Seller is unwilling or unable to satisfy your requests, or you do not want to purchase the Property in its disclosed and discovered condition, you have the right to cancel the agreement if you act within specific time periods. If you do not cancel the agreement in a timely and proper manner, you may be in breach of contract.

**C. SELLER RIGHTS AND DUTIES:** Seller is required to disclose to you material facts known to him/her that affect the value or desirability of the Property. However, Seller may not be aware of some Property defects or conditions. Seller does not have an obligation to inspect the Property for your benefit nor is Seller obligated to repair, correct or otherwise cure known defects that are disclosed to you or previously unknown defects that are discovered by you or your inspectors during escrow. The purchase agreement obligates Seller to make the Property available to you for investigations.

**D. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as soil stability, geologic or environmental conditions, hazardous or illegal controlled substances, structural conditions of the foundation or other improvements, or the condition of the roof, plumbing, heating, air conditioning, electrical, sewer, septic, waste disposal, or other system. The only way to accurately determine the condition of the Property is through an inspection by an appropriate professional selected by you. If Broker gives you referrals to such professionals, Broker does not guarantee their performance. You may select any professional of your choosing. In sales involving residential dwellings with no more than four units, Brokers have a duty to make a diligent visual inspection of the accessible areas of the Property and to disclose the results of that inspection. However, as some Property defects or conditions may not be discoverable from a visual inspection, it is possible Brokers are not aware of them. If you have entered into a written agreement with a Broker, the specific terms of that agreement will determine the nature and extent of that Broker's duty to you. **YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

**E. YOU ARE ADVISED TO CONDUCT INVESTIGATIONS OF THE ENTIRE PROPERTY, INCLUDING, BUT NOT LIMITED TO THE FOLLOWING:**

1. **GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof, plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa, other structural and non-structural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property. (Structural engineers are best suited to determine possible design or construction defects, and whether improvements are structurally sound.)
2. **SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. (Professionals such as appraisers, architects, surveyors and civil engineers are best suited to determine square footage, dimensions and boundaries of the Property.)
3. **WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms and other infestation or infection. Inspection reports covering these items can be separated into two sections: Section 1 identifies areas where infestation or infection is evident. Section 2 identifies areas where there are conditions likely to lead to infestation or infection. A registered structural pest control company is best suited to perform these inspections.
4. **SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage. (Geotechnical engineers are best suited to determine such conditions, causes and remedies.)

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2004, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.

BIA-A REVISED 10/02 (PAGE 1 OF 2)

Buyer's Initials ( ___ ) ( ___ )
Seller's Initials ( ___ ) ( ___ )
Reviewed by ___ Date ___

BUYER'S INSPECTION ADVISORY (BIA-A PAGE 1 OF 2)

Agent: Alan Marks Phone: (925)2581111 Fax: (925)2582226 Prepared using WINForms® software
Broker: Alain Pinel Realtors 2 Theatre Square #315 , Orinda CA 94563

Property Address: 5122 Acacia, Oakland CA 94618 Date: October 28, 2007

5. ROOF: Present condition, age, leaks, and remaining useful life. (Roofing contractors are best suited to determine these conditions.)
6. POOL/SPA: Cracks, leaks or operational problems. (Pool contractors are best suited to determine these conditions.)
7. WASTE DISPOSAL: Type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.
8. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS: Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components.
9. ENVIRONMENTAL HAZARDS: Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants). (For more information on these items, you may consult an appropriate professional or read the booklets "Environmental Hazards: A Guide for Homeowners, Buyers, Landlords and Tenants," "Protect Your Family From Lead in Your Home" or both.)
10. EARTHQUAKES AND FLOODING: Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood. (A Geologist or Geotechnical Engineer is best suited to provide information on these conditions.)
11. FIRE, HAZARD AND OTHER INSURANCE: The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies. (An insurance agent is best suited to provide information on these conditions.)
12. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS: Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size. (Such information is available from appropriate governmental agencies and private information providers. Brokers are not qualified to review or interpret any such information.)
13. RENTAL PROPERTY RESTRICTIONS: Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants; and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements. (Government agencies can provide information about these restrictions and other requirements.)
14. SECURITY AND SAFETY: State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property. Compliance requirements differ from city to city and county to county. Unless specifically agreed, the Property may not be in compliance with these requirements. (Local government agencies can provide information about these restrictions and other requirements.)
15. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS: Neighborhood or area conditions, including schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (x) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

By signing below, Buyer and Seller each acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyer is encouraged to read it carefully.

| | | | |
|---|---|---|---|
| [signature] | 10/28/2007 | [signature] | 10/28/2007 |
| Buyer Signature | Date | Buyer Signature | Date |
| Abigail Hendrickson | | Shelly Hendrickson | |
| [signature] | 10/29/07 | | |
| Seller Signature | Date | Seller Signature | Date |

THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ________ Date ________

CALIFORNIA ASSOCIATION OF REALTORS®

# DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIPS

**(As required by the Civil Code)**
**(C.A.R. Form AD, Revised 4/06)**

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

## SELLER'S AGENT

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:

To the Seller:

A Fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## BUYER'S AGENT

A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:

To the Buyer:

A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.

To the Buyer and the Seller:

(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.

An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

## AGENT REPRESENTING BOTH SELLER AND BUYER

A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.

In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:

(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.

In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.

The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction.

**This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully.**

**I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ BUYER ☒ SELLER [signature] Date October 28, 2007 Time ________ ☐ AM ☐ PM

☐ BUYER ☐ SELLER ____________________ Date ____________ Time ________ ☐ AM ☐ PM

Agent Alain Pinel Realors DRE Lic. # ____________
Real Estate Broker (Firm)

By ____________________ DRE Lic. # ____________ Date October 28, 2007
(Salesperson or Broker-Associate)
Alan Marks

**THIS FORM SHALL BE PROVIDED AND ACKNOWLEDGED AS FOLLOWS** (Civil Code §2079.14):

- When the listing brokerage company also represents Buyer, the Listing Agent shall have one AD form signed by Seller and one signed by Buyer.
- When Buyer and Seller are represented by different brokerage companies, the Listing Agent shall have one AD form signed by Seller and the Buyer's Agent shall have one AD form signed by Buyer and one AD form signed by Seller.

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC. ALL RIGHTS RESERVED.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is available for use by the entire real estate industry. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
*a subsidiary of the California Association of REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by ________ Date ________

EQUAL HOUSING OPPORTUNITY

Agent: Alan Marks Phone: (925)2581111 Fax: (925)2538339 Prepared using WINForms® software
Broker: Alain Pinel Realtors 2 Theatre Square #315 , Orinda CA 94563

## CIVIL CODE SECTIONS 2079.13 THROUGH 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. **(b)** "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. **(c)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. **(d)** "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. **(f)** "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a selling agent which becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property which constitutes or is improved with one to four dwelling units, any leasehold in this type of property exceeding one year's duration, and mobile homes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. **(n)** "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. **(o)** "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: **(a)** The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). **(c)** Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. **(d)** The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.17 (a)** As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller.
**(c)** The confirmation required by subdivisions (a) and (b) shall be in the following form.

(DO NOT COMPLETE, SAMPLE ONLY) is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

(DO NOT COMPLETE, SAMPLE ONLY) is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Selling Agent if not the same as the Listing Agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Buyer's Initials ( ______ ) ( ______ )
Seller's Initials ( ______ ) ( ______ )

Copyright © 1991-2007, CALIFORNIA ASSOCIATION OF REALTORS®, INC.

Reviewed by ______ Date ______

# EXHIBIT B

# STRAIGHT NOTE

$200,000.00 San Francisco, California October 27, 2006

On or before, April 1, 2007, for value received, I promise to pay to **Joong M. Yang, a single man at 296 Mather Street, #2, Oakland, Ca. 94611** or order,

the sum of TWO HUNDRED THOUSAND DOLLARS AND 00/100 **AND 00/100** DOLLARS,

with interest from January 1, 2007, until paid at the rate of 20% percent per annum, payable Monthly interest only installment of Three Thousand Three Hundred Thirty Three Dollars and 33/100------ ------------( $3,333.33 ) ------------DOLLARS,OR MORE, beginning on January 1, 2007 and continuing monthly thereafter until March 1 ,2007, then Commencing on March 1,2007 interest at 24% PER ANNUM with monthly installment of FOUR THOUSAND DOLLARS AND 00 / 100 ( $4,000.00 ) DOLLARS, ORE MORE, beginning on March 1, 2007, and continuing monthly thereafter until the 1st day of April, 2007, at which time the entire unpaid principal balance, together with accrued interest, shall become immediately due and payable.

**Balloon Payment:** This Note is subject to Section 2966 of the Civil Code, which provides that the holder of this Note shall give written notice to the Trustor, or his successor in interest, of prescribed information at least 90 and not more than 150 days before any balloon payment is due.

**Due on Sale (Acceleration):** If the Trustors shall sell, convey, or alienate said property or any part thereof, or any interest therein, or shall be divested of their title in any manner or way, whether voluntarily or involuntarily, any indebtedness or obligation secured hereby, irrespectively of the maturity date expressed in any note evidencing the same, at the option of the holder hereof and without demand or notice, shall immediately become due and payable.

**Late Charge:** In the event that any payment, or any portion thereof, due hereunder is not received by the Payee within _10_ days after the due date thereof, the undersigned agrees to pay to Payee, in addition to the regular monthly payment, a late charge of $200.00.

Principal and interest payable in lawful money of the United States of America. Should default be made in payment of interest when due the whole sum of principal and interest shall become immediately due at the option of the holder of this Note and after said breach, said obligation shall continue to accrue interest at the rate of percent per annum. If action be instituted on this Note I promise to pay such sum as the Court may fix as attorney's fees. This Note is secured by a Deed of Trust of even date herewith.

[signature]

Edward S. Ehee

DO NOT DESTROY THIS NOTE: When paid, this Note and the Deed of Trust must be surrendered to Trustee for cancellation, before reconveyance will be made.

EXHIBIT C

RECORDING REQUESTED BY:
Joong M. Yang

**When Recorded Mail Document To:**
Joong M. Yang
296 Mather Street, # 2
Oakland, Ca. 94611

APN: 048A-7107-031-03

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

**THIS DEED OF TRUST**, made October 27, 2006, between **Edward S. Ehee, a married man, as his sole & separate property**, herein called **TRUSTOR,** whose address is

**6122 Acacia Avenue**
**Oakland, Ca. 94618**,

**Fidelity National Title Company, a California corporation**, herein called **TRUSTEE,** and Joong M. Yang, a single man, herein called **BENEFICIARY,**

**WITNESSETH:** That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in Alameda County, California, described as:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

**Balloon Payment:** This Note is subject to Section 2966 of the Civil Code, which provides that the holder of this Note shall give written notice to the Trustor, or his successor in interest, of prescribed information at least 90 and not more than 150 days before any balloon payment is due.

**Due on Sale (Acceleration):** If the Trustors shall sell, convey, or alienate said property or any part thereof, or any interest therein, or shall be divested of their title in any manner or way, whether voluntarily or involuntarily, any indebtedness or obligation secured hereby, irrespectively of the maturity date expressed in any note evidencing the same, at the option of the holder hereof and without demand or notice, shall immediately become due and payable.

Anything herein to the contrary notwithstanding, in the event of a voluntary sale, transfer or conveyance of all or any portion of the property described herein, any indebtedness or obligation due under the Note secured hereby, shall at the option of the holder hereof, immediately become due and payable.

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

**For the Purpose of Securing:** 1. Performance of each agreement of Trustor incorporated by reference or contained herein. 2. Payment of the indebtedness evidenced by one Promissory Note of even date herewith, and any extension or renewal thereof, in the principal sum of **$200,000.00** executed by Trustor in favor of Beneficiary or order. 3. Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

INITIALS ______ ______ ______ ______

APN: 048A-7107-031-03

**To Protect the Security of this Deed of Trust, Trustor Agrees:** By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious Deed of Trust recorded in Santa Barbara County and Sonoma County October 18, 1961, and in all other counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Kings | 792 | 833 | Placer | 895 | 301 | Sierra | 29 | 335 |
| Alpine | 1 | 250 | Lake | 362 | 39 | Plumas | 151 | 5 | Siskiyou | 468 | 181 |
| Amador | 104 | 348 | Lassen | 171 | 471 | Riverside | 3005 | 523 | Solano | 1105 | 182 |
| Butte | 1145 | 1 | Los Angeles | T2055 | 899 | Sacramento | 4331 | 62 | Sonoma | 1851 | 689 |
| Calaveras | 145 | 152 | Madera | 810 | 170 | San Benito | 271 | 383 | Stanislaus | 1715 | 456 |
| Colusa | 296 | 617 | Marin | 1508 | 339 | San Bernardino | 5567 | 61 | Sutter | 572 | 297 |
| Contra Costa | 3978 | 47 | Mariposa | 77 | 292 | San Francisco | A332 | 905 | Tehama | 401 | 289 |
| Del Norte | 78 | 414 | Mendocino | 579 | 530 | San Joaquin | 2470 | 311 | Trinity | 93 | 366 |
| El Dorado | 568 | 456 | Merced | 1547 | 538 | San Luis Obispo | 1151 | 12 | Tulare | 2294 | 275 |
| Fresno | 4626 | 572 | Modoc | 184 | 851 | San Mateo | 4078 | 420 | Tuolumne | 135 | 47 |
| Glenn | 422 | 184 | Mono | 52 | 429 | Santa Barbara | 1878 | 860 | Ventura | 2062 | 386 |
| Humboldt | 657 | 527 | Monterey | 2194 | 538 | Santa Clara | 5336 | 341 | Yolo | 653 | 245 |
| Imperial | 1091 | 501 | Napa | 639 | 86 | Santa Cruz | 1431 | 494 | Yuba | 334 | 486 |
| Inyo | 147 | 598 | Nevada | 305 | 320 | Shasta | 684 | 528 | | | |
| Kern | 3427 | 60 | Orange | 5889 | 611 | San Diego | Series 2 Book 1961, Page 183887 | | | | |

which provisions, identical in all counties, (printed on the attached unrecorded pages) are hereby adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that Trustor will observe and perform said provisions; and that the references to property, obligations and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

DATED: October 27, 2006

STATE OF CALIFORNIA )
COUNTY OF Alameda )
ON October 30, 2006 before me, Nigel S. Bolton (here insert name and title of the officer), personally appeared Edward S. Ehee

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature [signature] (Seal)

NIGEL S. BOLTON
COMM. # 1420779
NOTARY PUBLIC-CALIFORNIA
ALAMEDA COUNTY
COMM. EXP. MAY 30, 2007

[signature]
Edward S. Ehee

INITIALS [initials] ______ ______ ______

APN: 048A-71017-031-03 **DO NOT RECORD**

The following is a copy of provisions (1) to (14), inclusive, of the fictitious deed of trust, recorded in each county in California, as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

**TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR AGREES:**

(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefore; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefore and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such, rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

INITIALS: ______ ______ ______ ______

LEGAL DESCRIPTION

EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF OAKLAND, COUNTY OF ALAMEDA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

A portion of Lot 32, in Block 6, according to the Map entitled, "A Revised Map of Rock Ridge Park", filed December 8, 1909, Map Book 26, Page 21, Alameda County Records, described as follows:

Beginning at a point on the northeastern line of Acacia Avenue, as said Avenue is shown on said Map, distant thereon north 42' west 139.46 feet from the point of intersection thereof with the eastern line of Lot 31, in said Block 6; running thence along the said line of Acacia Avenue the two following courses and distances; north 42' west 28.00 feet to an angle point thereon; and thence north 54' west 32.00 feet to a point on the northwestern line of said Lot 32; thence along the said last mentioned line north 46' east 123.56 feet to a point on the northeastern line of said Lot 32; thence along the said last mentioned line south 50' east 52.00 feet until intersected by a line drawn north 42' 08" east from the point of beginning; thence along the line so drawn south 42' 08" west 124.22 feet to the point of beginning.

APN: 048A-7107-031-03

APN: 048A-7107-031-03 **DO NOT RECORD**

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash of lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the proceeding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and pages where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledgees, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

INITIALS ______ ______ ______

**REQUEST FOR FULL RECONVEYANCE**

**Fidelity National Title Company, a California corporation**, TRUSTEE:

The undersigned is the legal owner and holder of all indebtedness secured by the within Deed of Trust. All sums secured by said Deed of Trust have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel all evidences of indebtedness, secured by said Deed of Trust, delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated ______________________

______________________ ______________________

By:______________________ By:______________________

Please mail Reconveyance to:

______________________

Do not lose or destroy this Deed of Trust OR THE NOTE which it secures. Both original documents must be delivered to the Trustee for cancellation before reconveyance will be made.

STATE OF CALIFORNIA )
COUNTY OF ______________________ )

ON ______________________ before me, ______________________ (here insert name and title of the officer), personally appeared ______________________

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature ______________________ (Seal)

# EXHIBIT B

James D. Wood, St. Bar. No. 106936
Attorney at Law
3675 Mount Diablo Boulevard, Suite 250
Lafayette, California 94549-3775
Tel. (925) 284-9663
Fax. (925) 283-9663

Attorney for Debtor Edward S. Ehee

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VIPER CAPITAL MANAGEMENT, LLC, et al.,

Defendants,

and

COMPASS WEST FUND, et al.,

Relief Defendants.

In re:

EDWARD SEWON EHEE, et al.,

Debtors.

No. C 06-06966 SI, 06-7270 SI; 07-3995 SI, 07-3996 SI, and 07-3997 SI

(Formerly: U.S. Bk. Ct. N.D. Cal. Involuntary Chapter 7 Case Nos. 07-40126T, 07-40129T, 07-40130T)

PROOF OF SERVICE

**[No Hearing Scheduled]**

**PROOF OF SERVICE/ CERTIFICATE OF SERVICE**

Court:    U.S. Dist. Court N.D. Cal., San Francisco Div.

Case:    Securities And Exchange Commission, vs. Viper Capital Management, et al. and related actions, Case Nos. C 06-6966 SI, C 06-7270 SI, C 07-2507 SI, C 07-2508 SI, C 07-2509 SI (This filing relates to *In re Ehee*, Invol. Bankruptcy)

Date of Service:    November 6, 2007

I, the undersigned say:

I am and was at the time of the service hereinafter mentioned a citizen of the United States, over the age of eighteen years and not a party to the within entitled action or proceeding.

I am the member of the Bar or employed by the member of the bar named below.  I am familiar with the regular mail collection and processing practices of the business.  The business address is:  James D. Wood, Attorney at Law, 3675 Mt. Diablo Blvd., Ste. 250, Lafayette, CA  94549-3775.

On the date shown above, I served a copy of the documents listed below or on the attached exhibit on the parties in this action either by placing a true copy thereof in envelope(s) addressed as shown below or on the attached exhibit and on the same day, pursuant to ordinary business practices, by then sealing said envelope and depositing same for collection and mailing, with postage thereon fully prepaid, with the United States Postal Service at Half Moon Bay, California or by arranging for the alternative delivery mode described below.  There is delivery service by United States mail at the place so addressed and/or there is a regular communication by mail between the place of mailing and the place so addressed.

**Parties Served**

**Service by U.S. First Class Mail:**

U.S. Trustee :
Laurent Chen, Esq.
Office of the U.S. Trustee /Oak
1301 Clay St Ste 690n
Oakland, CA 94612-5231

Request for special notice in bankruptcy case
eCAST Settlement Corporation
POB 35480
Newark, NJ 07193-5480

Request for special notice in bankruptcy case 07-40126T
Gilbert B. Weisman
Becket and Lee
P.O. Box 3001
Malvern, PA 19355-0701

Pro se relief defendant in 06-06966:
Jennifer Ehee
6122 Acacia Ave.
Oakland, Ca  94618-1819

Pro se relief defendant in  06-06966:
Albert Ehee
8449 Canterberry Dr
Burr Ridge IL 60527-6954

Attorney for Trustee Lois I. Brady (Trustee for Compass West
Fund C07-2509SI):
Reidun Strømsheim
Strømsheim & Associates
201 California Street, Suite 350
San Francisco, California 94111-5038
Email: rstromsheim@stromsheim.com

Attorney for Roosevelt Fund in bankruptcy cases:
Richard C. Pedone
Nixon Peabody LLP
100 Summer St
Boston MA 02110-2131

Attorney for Roosevelt Fund in bankruptcy cases:
James S. Monroe
Law Offices of Nixon Peabody
2 Embarcadero Center #2700
San Francisco, CA 94111-3996
(415) 984-8200
Email: jmonroe@nixonpeabody.com

Attorney for SEC, 06-06966:
John S. Yun
Securities & Exchange Commission
44 Montgomery St, Suite 2600
San Francisco, CA 94104-4691
415-705-2500
Fax: 415-705-2501
Email: yunj@sec.gov

Request for Special Notice (In re Ehee):
Alan S. Wolf, Esq.
The Wolf Firm, A Law Corporation
Attorneys for EMC Mortgage Corporation
38 Corporate Park
Irvine, CA 92606-5105
Email: alan.wolf@wolffirm.com

Attorney for Relief Defendant Robert Ehee in, 06-06966:
Thomas B. Mayhew
Farella Braun & Martel
235 Montgomery Street, 30th Fl.
San Francisco, CA 94104-3117
415/954-4400
Fax: (415) 954-4480
Email: tmayhew@fbm.com

Attorney for Trustee Paul Jordan Mansdorf (Trustee for Compass Fund Management C07-2507SI:
Barry Milgrom
121 Spear Street
Suite 200
San Francisco, CA 94105-1582
Email: bmilgrom@luce.com

Attorney for relief defendant Robert Ehee in 06-06966:
Arthur S. Greenspan, Esq.
Richards Kibbe & Orbe LLP
One World Financial Center
New York, NY 10281-1098
212-530-1816
Fax: 917-344-8816
Email: agreenspan@rkollp.com

Counsel for Messrs. Bradford and Garman:
Eliot A. Adelson
Kirkland & Ellis LLP
555 California St.
San Francisco, CA 94104
Email: eadelson@kirkland.com

Unsecured creditor list:
Betty Ferrero
800 Mainberry Drive, #505
Madera, CA 93637-3325

Unsecured creditor list:
Richard Garman
1 Madrona Street
Belvedere, CA 94920

Unsecured creditor list:
Tae Noh
6594 Gillis Drive
San Jose, CA 95120-4625

Unsecured creditor list:
Ozcar Multi Strategies LLC
787 Seventh Avenue, 3rd Floor
New York, NY 10019-6146

Gov. agency listed in all bankruptcy cases:
Labor Commissioner
1515 Clay St.
Room 801
Oakland, CA 94612-1463

Gov. agency listed in all bankruptcy cases:
U.S. Attorney
Civil Division
450 Golden Gate Ave.
San Francisco, CA 94102-3495

Gov. agency listed in all bankruptcy cases:
State Board of Equalization
Collection Dept.
P.O. Box 942879-0001
Sacramento, CA 94279-0001

Secured Lender subject to 363(f) sale:
Joong M. Yang
1920 Arrowhead Dr
Oakland, CA 94611-1461

Document(s) Served

**Edward Ehee's Motion For Order Authorizing Sale Of Property Free And Clear Of Yang Lien**

**Notice And Opportunity For Hearing On Edward Ehee's Motion for Order Authorizing Sale of Property Free and Clear of Yang Lien**

**Memorandum Of Points And Authorities In Support Of Edward Ehee's Motion For Order Authorizing Sale Of Property Free And Clear Of Yang Lien**

**Declaration Of Edward Ehee In Support Of In Support Of Edward Ehee's Motion For Order Authorizing Sale Of Property Free And Clear Of Yang Lien**

I declare under penalty of perjury that the foregoing is true and correct. Executed within the United States of America on November 6, 2007.

/s/ James D. Wood

James D. Wood

POS01.doc 11/6/07 JDW

# EXHIBIT C

James D. Wood, St. Bar. No. 106936
Attorney at Law
3675 Mount Diablo Boulevard, Suite 250
Lafayette, California 94549-3775
Tel. (925) 284-9663
Fax. (925) 283-9663
E-mail: jdw@jdwoodlaw.com

Attorney for Debtor Edward S. Ehee

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

v.

VIPER CAPITAL MANAGEMENT, LLC, et al.,

Defendants,

and

COMPASS WEST FUND, et al.,

Relief Defendants.

In re:

EDWARD SEWON EHEE, et al.,

Debtors.

No. C 06-06966 SI, 06-7270 SI; 07-3995 SI, 07-3996 SI, and 07-3997 SI

(Formerly: U.S. Bk. Ct. N.D. Cal. Involuntary Chapter 7 Case Nos. 07-40126T, 07-40129T, 07-40130T)

ORDER BY DEFAULT GRANTING EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN

**[No Hearing Scheduled]**

(Local Bankruptcy Rule 9014-1(b)(3))

The Court considered Debtor Edward Ehee's REQUEST FOR ORDER BY DEFAULT GRANTING EDWARD EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN dated November 28, 2007 (the "Default

Request"), EHEE'S MOTION FOR ORDER AUTHORIZING SALE OF PROPERTY FREE AND CLEAR OF YANG LIEN dated November 6, 2007 (the "Motion"), related declarations, memoranda, and other supporting documents in chambers pursuant to Bankruptcy Local Rule ("B.L.R.") 9014-1(b)(3) and (4). The Court assumed jurisdiction over the involuntary bankruptcy case now pending against Debtor Edward Sewon Ehee captioned above by Order dated June 22, 2007 (entered June 27, 2007).

GOOD CAUSE APPEARING, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. The time period under B.L.R. 9014-1(b)(3) for filing any opposition and a request for hearing on the Motion having expired with no party having filed such opposition or request, the Default Request and Motion are granted as follows.

2. Ehee is authorized to sell that certain real property commonly know as 6122 Acacia Ave., Oakland, California under 11 U.S.C. Sect. 363. The sale shall be made substantially in accordance with the "Residential Purchase Agreement and Joint Escrow Instructions" attached to the declaration of Edward Ehee dated November 5, 2007 and filed in this action on November 6, 2007 with such extensions of closing deadlines as the parties may execute. The sale shall also be subject to the following:

a. The purchase price shall be $1,200,000;

b. Closing shall occur within 14 days of the entry of this Order unless both parties agree to an extension of such deadline;

c. Normal and regular closing costs; except as noted below, all liens and encumbrances of record; and real estate commissions shall be paid from escrow;

d.  Proceeds of the sale net of such costs, commissions, and liens shall paid into the registry of this Court;

e.  Ehee shall comply with paragraph IV of the Preliminary Injunction issued by this Court (in Action No. C 06-06966 SI ) on November 22, 2006;

f.  Ehee is authorized to modify the terms of the sale or sell to a different buyer so long as the terms of such sale are not less favorable to the seller than those set-forth above and Ehee otherwise complies with paragraph IV of the Preliminary Injunction with respect to any such proposed modification or alternative buyer; and

g.  The sale shall be free and clear of the lien created and evidenced by that certain note and deed of trust dated October 27, 2007 in the face amount of $200,000 in favor of Joong M. Yang (Recorded October 30, 2006 in the Alameda County Official Records under Recorder's Serial Number 2006404634) encumbering the property (the "Yang Lien") pursuant to 11 U.S.C. Sect. 363(f)(3), or (f)(4).  The Yang Lien shall attach to the proceeds of sale to be held in trust in the registry of this Court with the same force, effect, validity, and priority as such lien had with respect to the property sold pursuant to this Order pending further determinations of the Court regarding the effect, validity, amount, and priority of such lien.

3.  The Court waives the 10 day stay of this Order to the extent such stay is otherwise applicable under Fed.R.Bankr.P. 6004(g).

4. The Court reserves jurisdiction over all issues relating to the interpretation, implementation and enforcement of this Order and disposition of the funds held in the Court's registry pursuant thereto.

DATED: _________________

Proposed Form 11/28/07

________________________________
Susan Illston, United States District Judge