Paul J. Byrne, Esq. (State Bar Number: 190860)
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111-3996
Telephone: (415) 984-8200
Facsimile: (415) 984-8300
E-mail:  pbyrne@nixonpeabody.com

Richard Pedone (Admitted Pro Hac Vice)
NIXON PEABODY LLP
100 Summer Street
Boston, MA  02110-2131
Tel:  (617) 345-1000
Fax: (617) 345-1300
E-Mail:        rpedone@nixonpeabody.com

Attorneys for Petitioning Creditor, Roosevelt Fund, L.P.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
(San Francisco Division)

| | |
|---|---|
| In re:<br><br>EDWARD SEWON EHEE,<br><br>Debtor. | Case No. C 07-03996-SI<br><br>**MOTION (I) REQUESTING THE APPROVAL OF A SETTLEMENT,(II) REQUESTING RETURN OF THE REFERENCE OF THE BANKRUPTCY CASES TO THE BANKRUPTCY COURT, AND (III) REQUESTING OTHER RELATED RELIEF** |
| In re:<br><br>COMPASS FUND MANAGEMENT, LLC,<br>Debtor. | Objection Deadline<br>Date: February 25, 2008<br>Time: 5:00 p.m.<br>Judge: Susan Illston<br>Courtroom: 10<br>(No Hearing Scheduled)<br>Case No. C 07-03995-SI |
| In re:<br><br>COMPASS WEST FUND, L.P.,<br><br>Debtor. | Case No. C 07-03997-SI |

MOTION FOR APPROVAL OF SETTLEMENT
IN RE EHEE, CASE NO. 07-3996 (AND RELATED CASES)

10878991.3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MOTION FOR AN ORDER APPROVING SETTLEMENT AND REQUESTING OTHER RELATED RELIEF

Roosevelt Fund, L.P., by its attorneys, Nixon Peabody LLP, for its motion (the "Motion") requesting (i) approval of a settlement agreement, (ii) requesting the return of the reference of the bankruptcy cases, and (iii) requesting other related relief, respectfully represents:

### I.    PRELIMINARY STATEMENT

By and through this Motion, Roosevelt requests that this Court take the following steps: (1) grant this Motion in its entirety; (2) enter an order approving the Settlement Agreement; (3) enter an order for the relief against Edward Ehee; (3) enter an order returning the reference of the Bankruptcy Cases to the Bankruptcy Court; and (4) enter an order sending the reference to the Bradford Action to the Bankruptcy Court to be administered in a related adversary proceeding.

### II.    JURISDICTION AND PROCEDURAL BACKGROUND

Roosevelt Fund, L.P.[1] ("Roosevelt"), a creditor of the Debtor, filed an involuntary chapter 7 bankruptcy petition[2] (the "Petition") against Edward Ehee (the "Debtor") on January 12, 2007 (the "Petition Date"), pursuant to Section 303 of Title 11 of the United States Code (the "Bankruptcy Code").[3]

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Venue of this Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1]    Roosevelt Fund, L.P. was previously known as A.A.G. Roosevelt Fund, L.P., and its official corporate name was previously Anira Advisory Group Roosevelt Fund, L.P.

[2]    The petition conforms to Official Bankruptcy Form 50.

[3]    This Court has assumed jurisdiction over the case by virtue of its order dated May 10, 2007, withdrawing the reference of this involuntary bankruptcy and the related bankruptcy cases from the Bankruptcy Court.

### III.    FACTS[4]

Roosevelt is a Delaware limited partnership with a principal place of business in Greenbrae, California.

The Debtor is a natural person who is a citizen and resident of the United States and is a resident of San Ramon, California.  The Debtor is also a person against whom an order for relief may be entered under Section 303 of the Bankruptcy Code.

On November 8, 2006, the Securities and Exchange Commission (the "Commission") filed a complaint alleging the Debtor (and others) violated various federal securities laws with this Court. *Securities & Exchange Commission v. Viper Capital Management, LLC, et al.*, Case No. C-06-6966-SI (the "SEC Action").

On November 22, 2006, Roosevelt filed a complaint (the "Complaint") against Ehee and his management companies alleging violations of various federal securities laws and certain state laws. *AAG Roosevelt Fund, L.P. v. Edward Sewon Ehee, et al.*, Case No. C-06-7270 SI (N.D. Cal.) (the "Roosevelt Action").

In addition to filing the Petition against the Debtor, Roosevelt simultaneously filed involuntary bankruptcy petitions against the following entities:

(a)    Compass Fund Management, LLC, thus commencing *In the Matter of Compass Fund Management, LLC*, Bankr. N.D. Cal. Chapter 7 Case No. 07-40129 (Now in the U.S. District Court for the Northern District of California, Chapter 7 Case No. 07-3995 SI) (the "Compass Fund Management Bankruptcy Case"); and

(b)    Compass West Fund, L.P., thus commencing *In the Matter of Compass West Fund, L.P.*, Bankr. N.D. Cal. Chapter 7 Case No. 07-40130 (Now in the U.S. District Court

---

[4]    The following are undisputed for the purposes of the entry of an order approving the Settlement Agreement.

for the Northern District of California, Chapter 7 Case No. 07-3997 SI) (the "Compass West Bankruptcy Case").[5]

No party contested the petitions filed in either the Compass Fund Management Bankruptcy Case or the Compass West Bankruptcy Case. Orders for relief have been entered and chapter 7 trustees have been appointed in both cases. This Court has deemed the SEC Action, this involuntary bankruptcy case, the Roosevelt Action, the Compass Fund Management Bankruptcy Case, and the Compass West Bankruptcy Case to be related cases.

On or about May 1, 2007, Kevin Bradford (individually and as trustee for the Mackenzie Bradford Trust, the Madison Bradford Trust, the Gage Bradford Trust and the Morgan Bradford Trust) and Richard Garman (collectively, the "Bradford Plaintiffs") filed a complaint (the "Bradford Complaint") against Edward Sewon Ehee, Viper Capital Management, LLC, Compass Fund Management, LLC, Robert Ehee, Albert Ehee, Jenifer Ehee and Does 1-20 (collectively the "Bradford Defendants") in the Superior Court for the State of California, County of San Francisco (Case No. CGC-07-462966, the "Bradford Action"). The Bradford Complaint alleges, inter alia, various counts of securities fraud, breach of contract, unjust enrichment, breaches of fiduciary duties, fraud, negligent misrepresentation, conspiracy, conversion, and various fraudulent conveyances.

On or about September 14, 2007, this Jennifer Ehee removed the Bradford Action from the state court based on this Court's jurisdiction over the Bankruptcy Cases. See N.D. Cal. Case No. 07-04747.

On June 27, 2007, at the request of the Commission and by order of this Court, this Court withdrew the references to the Bankruptcy Cases from the Bankruptcy Court.

On or about November 6, 2007, the Debtor filed his Motion for an Order Authorizing the Sale

---

[5] The Ehee Bankruptcy, Compass Fund Management Bankruptcy Case, and the Compass West Bankruptcy Case are collectively referred to as the "Bankruptcy Cases".

of Property Free and Clear of Yang Lien (the "Sale Motion"). Pursuant to the Sale Motion, Ehee requested that certain real property commonly known as 6122 Acacia Avenue, Oakland, California ("6122 Acacia Ave.") would be sold for $1,200,000 (the "Proceeds").

By order of the Court, dated December 20, 2007, the Proceeds, net of such costs commissions and liens paid into the registry of the Court. The sale of 6122 Acacia Ave. was made free and clear of the lien created and evidenced by a certain note and deed of trust dated October 27, 2007 in the face amount of $200,000 in favor of Joong M. Yang (the "Yang Lien"). The Yang Lien attached to the Proceeds which are held in trust in the registry of the Court. The Commission and Roosevelt have raised questions to the validity and enforceability of the Yang Lien, although no formal objections have been filed.

The Debtor has executed a settlement of the SEC Action with the Commission. The settlement with the Commission contemplates, inter alia, that this Court will assert and maintain jurisdiction over the Proceeds in the form of a fund (the "SEC Fund") which will be disbursed to creditors pursuant to an equitable plan to be approved by the Court.

For the limited purpose of the entry of an order approving this Motion, the Debtor does not dispute that:

(a)    Roosevelt was eligible to file the petition under Section 303(b) of the Bankruptcy Code;

(b)    Roosevelt's unsecured claim against the Debtor exceeds $13,475; and

(c)    As of the Petition Date, the Debtor was generally not paying his debts as they became due unless a debt was the subject of a bona fide dispute as to liability or amount.[6]

---

[6]    The position set forth in this paragraph of the Motion constitutes concessions from the position taken in the Debtor's answer to the petition.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    RELIEF REQUESTED

Attached to this Motion as **Exhibit A** is a Settlement Agreement (the "Settlement Agreement") by and between the Debtor and Roosevelt (collectively referred to as the "Parties"). The recitations and terms set forth in the Settlement Agreement are incorporated in this Motion as if fully set forth herein.

Roosevelt files this Motion, in abundance of caution, due to any possible or potential applicability of 18 U.S.C. § 152(6).

By the Settlement Agreement, the Parties agree to have this Court enter an order for relief against the Debtor.  The Parties further agree that a non-dischargeable judgment should be entered against the Debtor, as set forth in the Settlement Agreement, in a separate adversary proceeding which will be commenced by Roosevelt after the Settlement Agreement is approved and the references to the Bankruptcy Cases are returned to the Bankruptcy Court.

Roosevelt believes that the terms Settlement Agreement are in the best interests of the Debtor, its estate, and its creditors, and as such it should be approved in its entirety.

The Settlement Agreement and the agreements reflected therein are subject to entry of final, non-appealable orders by this Court.

Following the entry of an order approving the Settlement Agreement, Roosevelt will commence an adversary proceeding after the references of the District Court's jurisdiction pursuant to 28 U.S.C. § 157 over the Bankruptcy Cases are returned to the Bankruptcy Court in order to enter a non-dischargeable judgment against the Debtor.  The Roosevelt Action will remain stayed as to all other issues now pending in that action.

In light of the settlement of the SEC Action and the matters contained herein, Roosevelt believes it is appropriate to return the reference of the District Court's jurisdiction pursuant to 28 U.S.C. § 157 over the Bankruptcy Cases to the Bankruptcy Court for the continued administration of

1   the three bankruptcy estates by their respective trustees.  Roosevelt believes that the neither

2   Commission nor any other party-in-interest will oppose this request.

3       Additionally, as this Court's jurisdiction over the Bradford Action is based on this Court's

4
5   asserted bankruptcy jurisdiction, it is appropriate that the reference of the District Court's jurisdiction

6   pursuant to 28 U.S.C. § 157 over the Bradford Action be referred to the Bankruptcy Court along with

7   the Bankruptcy Cases.  Roosevelt believes that forgoing steps are necessary to best promote judicial

8   efficiency and economy and does not believe any party-in-interest will oppose this request.

9       Roosevelt requests that this Court continue to exercise its jurisdiction over the determination

10  of the validity and enforceability of the Yang Lien.  As the Proceeds will become part of the SEC

11  Fund, it is appropriate for this Court retain jurisdiction over that issue.

12
13              **IV.    NOTICE TO PARTIES**

14      Pursuant to Bankruptcy Rule 9006(c)(1), the Court may shorten time without notice.  As such,

15  Roosevelt requests that this Court set the objection deadline for this Motion to be set ten (10) days

16  from the date of the filing of this Motion.

17      Notice of this Motion has been provided to: (a) the United States Trustee for the Northern

18  District of California; (b) counsel to the Debtor; (c) counsel to Jennifer Ehee; (d) counsel to the

19
20  Compass West Trustee; (e) counsel to the Compass Fund Trustee; (f) counsel to the known parties in

21  the Bradford Action and (g) all parties who have requested to receive notice in the Bankruptcy Cases

22  via electronic mail.  In light of the nature of the relief requested herein, Roosevelt submits that no

23  other or further notice is required.

24      No previous request for the relief sought herein has been made by Roosevelt to this or any

25  other court.

26              **V.    CONCLUSION**

27
28      For the forgoing reasons, Roosevelt submits that this Court take the following steps: (1) grant

MOTION FOR APPROVAL OF SETTLEMENT          7                          10878991.3
IN RE EHEE, CASE NO. 07-3996 (AND RELATED
CASES)

this Motion in its entirety; (2) enter an order approving the Settlement Agreement; (3) enter an order for the relief against Edward Ehee; (3) enter an order returning the reference of the District Court's jurisdiction pursuant to 28 U.S.C. § 157 over of the Bankruptcy Cases to the Bankruptcy Court; and (4) enter an order sending the reference of the District Court's jurisdiction pursuant to 28 U.S.C. § 157 over the Bradford Action to the Bankruptcy Court to be administered in a related adversary proceeding.

**WHEREFORE**, the Roosevelt requests the Court for entry of an order, pursuant to § 105 Bankruptcy Code substantially in the form attached hereto as **Exhibit A**, (i) granting the Motion and approving the Settlement Agreement, (ii) enter an Order for relief against Edward Ehee; (iii) returning the reference of the District Court's jurisdiction pursuant to 28 U.S.C. § 157 over the Bankruptcy Cases and the Bradford Action to the Bankruptcy Court and (iv) grant such other and further relief as this Court may deem just and proper.

Dated: February 15, 2008

Respectfully Submitted,

NIXON PEABODY LLP

_____/s/_____
RICHARD PEDONE
PAUL J. BYRNE

Attorneys for Creditor, AAG Roosevelt Fund, L.P.

EXHIBIT A

EXECUTION COPY

## SETTLEMENT AGREEMENT

## RECITALS

A.  This Settlement Agreement And Mutual Release (the "Agreement") is made and entered into by and between Edward Sewon Ehee ("Ehee" or "Edward Ehee") and AAG Roosevelt Fund, L.P. ("Roosevelt"). Ehee and Roosevelt are sometimes collectively referred to herein as the "Parties" and individually as a "Party."

B.  On November 11, 2006, the Securities and Exchange Commission (the "Commission") filed a complaint against Viper Capital Management, LLC, Compass Fund Management, LLC, Edward Ehee, Compass West Fund, LP, Viper Founders Fund, LP, Viper Investments, LP, Albert Ehee, Robert Ehee, and Jennifer Ehee (collectively, the "Commission Action Defendants") alleging various securities fraud violations in the United States District Court for the Northern District of California (San Francisco Division) initiating Case No. 06-6966 (the "Commission Action").

C.  Edward Ehee and Jennifer Ehee are husband and wife. Albert Ehee is Edward Ehee's father. Robert Ehee is Edward Ehee's brother. Sung C. Pak is Edward Ehee's father-in-law.

D.  On November 22, 2006, Roosevelt filed a complaint (the "Roosevelt Complaint") against the Edward Ehee, Compass Fund Management, LLC, Compass West Fund L.P., Albert Ehee, Robert Ehee, and Jennifer Ehee (the "Roosevelt Action Defendants") alleging, inter alia, violation of federal securities laws; breach of contact; unjust enrichment; breach of fiduciary duty; fraud; conspiracy to commit fraud; negligent misrepresentation; fraudulent conveyance; constructive fraudulent conveyance; violation of Cal. Bus. &

Prof. Code §17200; constructive trust; and seeking declaratory relief, in the United States District Court for the Northern District of California (San Francisco Division) Case No. 06-7270 (the "Roosevelt Action" and "Roosevelt's Claims"). Edward Ehee and Jennifer Ehee did not timely file a response to the Roosevelt Complaint.

E.      On January 12, 2007 (the "Petition Date"), Roosevelt filed involuntary petitions against Compass West Fund LP, ("Compass West Fund") Compass Fund Management ("Compass Management"), and Edward Ehee (collectively, the "Debtors") under chapter 7 of Title 11 United States Code (the "Bankruptcy Code") with the U.S. Bankruptcy Court Northern District of California (the "Bankruptcy Court") thereby by commencing: In re Compass West Fund L.P. Bankruptcy Case No. 07-40130 (subsequently re designated as U.S. Dist. Ct. N.D. Cal. No. 07-3997 SI upon the district court's withdrawal of reference to the bankruptcy court as recited below) (the "Compass West Bankruptcy Case"), In re Compass Fund Management Bankruptcy Case No. 07-40129 (subsequently re designated as U.S. Dist. Ct. N.D. Cal. No. 07-3995 SI upon the district court's withdrawal of reference to the bankruptcy court as recited below) (the "Compass Fund Management Bankruptcy Case"), and In re Edward Sewon Ehee, Bankruptcy Case No. 07-40126 (subsequently re designated as U.S. Dist. Ct. N.D. Cal. No. 07-3996 SI) (the "Ehee Bankruptcy Case") (collectively, the "Bankruptcy Cases"). Commencement of each of the Bankruptcy Cases created bankruptcy estates referred to collectively herein as the "Bankruptcy Estates".

F.      On or about February 28, 2007, Edward Ehee having previously stipulated with Roosevelt to extend the deadline to respond to the involuntary petitions in each of the

Bankruptcy Cases to that date, timely answered the involuntary petition filed against him. No order for relief has been entered in the Ehee Bankruptcy Case and it remains open. Neither Compass West Fund nor Compass Management responded to the involuntary petitions filed against them.

G.    On February 20, 2007, the Bankruptcy Court entered an order for relief in the Compass West Fund Bankruptcy Case. Lois I. Brady was appointed interim trustee and is now the duly qualified and serving chapter 7 Trustee for Compass West Fund ("Brady" or the "Compass West Fund Trustee").

H.    On April 17, 2007, the Bankruptcy Court entered an order for relief in the Compass Management, Bankruptcy Case. Paul Jordan Mansdorf was appointed as interim chapter 7 Trustee and is now the duly qualified and serving chapter 7 Trustee for Compass Management (the "Compass Management Trustee").

I.    The Compass West Fund Trustee and the Compass Management Trustee are referred to collectively herein as the "Bankruptcy Trustees."

J.    On June 27, 2006, the U.S. District Court. N.D. California withdrew the reference of the Bankruptcy Cases from the Bankruptcy Court and assumed jurisdiction thereof as cases related to the Commission Action and the Roosevelt Action under newly assigned case numbers as recited above.

K.    Roosevelt has alleged in connection with the involuntary petitions commencing the Bankruptcy Cases that certain of the Roosevelt Action Defendants received fraudulent or otherwise improper transfers from the Debtors and that such claims are or may be the property of one of the Bankruptcy Estates.

EXECUTION COPY

L.      Edward Ehee has executed a proposed agreement with the Commission providing for the
        settlement of the Commission Action (the "Ehee Commission Settlement"). The Ehee
        Commission Settlement is now awaiting approval by the Commission. Among other
        things, the Ehee Commission Settlement contemplates that the U.S. District Court will
        adopt a plan pursuant to its equitable powers providing for the distribution of various
        property to be disgorged by Edward Ehee and/or others as proposed by the Commission
        (the "Commission Fund"). The Ehee Commission Settlement further contemplates that
        Edward Ehee would sell his home located at 6122 Acacia Ave., Oakland, California
        submit all proceeds net of liens and selling expenses of such sale for distribution pursuant
        to such plan, and that he would waive any exemption rights including any homestead
        claim therein. Ehee sold the Acacia Ave. subsequent to his execution of the Ehee
        Commission Settlement and the proceeds thereof, net of liens and other items paid from
        escrow have been or are now being transferred to the registry of the district court
        pursuant to its order.

M.      The Parties wish to compromise and settle fully and finally the disputes described above
        for the mutual promises and undertakings set forth herein and for other good and valuable
        consideration, the receipt of which is hereby acknowledged.

        NOW, THEREFORE, the Parties hereby agree as follows:

## AGREED TERMS

1.      Recitals. The recitals and terms defined as set forth above are incorporated herein as
        though fully set forth but shall not constitute admissions of any party to this Agreement
        except to the extent they are adopted hereinafter as warranties by the respective Parties.

Settlement Agreement – Edward Ehee/ AAG Roosevelt

Page 4 of 18

2.    Homestead Waiver. Effective and contingent upon the full execution and effectiveness
of the Ehee Commission Settlement and not contingent on Court Approval of this
Agreement, Edward Ehee waives any community property exemption and homestead
claim that he may have to the property located at 6122 Acacia Avenue, Oakland, CA and
the proceeds of the sale thereof which will be deposited in the Commission Fund.

3.    Approval of Agreement and Obligations of the Parties Prior to Full Effectiveness.
Promptly after execution of this Agreement, all Parties shall diligently and in good faith
take all steps reasonably required to seek any Court approval of this Agreement that
either Party reasonably deems necessary ("Court Approval") including giving appropriate
notice, affording opportunity for a hearing, and diligently prosecuting such request for
approval. "Court Approval" means the court having jurisdiction over the Bankruptcy
Cases and over any litigation between the Parties including the Roosevelt Action (or each
such court if there is more than one) has entered an Order approving this Agreement and
agreed to take any and all actions and enter any and all such orders, judgments, decrees,
etc. as are contemplated thereby and the compromise embodied herein which Order has
not been stayed or withdrawn and (unless such requirement is waived by all Parties), such
Order has become a Final Order. "Final Order" means an order or judgment of a court as
to which the time to appeal, petition for certiorari, or move for reargument or rehearing
has expired and as to which no appeal, petition for certiorari, or proceedings for
reargument or rehearing shall then be pending or as to which any right to appeal, petition
for certiorari, reargument, or rehearing shall have been waived in writing in a form and
substance approved by each Party or, in the event that an appeal, writ of certiorari,

reargument or rehearing thereof has been sought, such order or judgment of the court shall have been affirmed by the highest court to which such order or judgment was appealed, or from which reargument or rehearing was sought, or certiorari has been denied, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired.

4.  Effectiveness of Agreement. The obligations set-forth in Paragraphs 2 and 3 shall be effective upon execution of this Agreement. All other provisions of this Agreement shall be effective only upon the Parties obtaining Court Approval of this Agreement as defined above and upon the satisfaction of any other conditions for full effectiveness contained in this Agreement. If the Parties fail to obtain such approval or satisfy such conditions on or before March 15, 2008, or such other date as Edward Ehee and Roosevelt may agree upon, all remaining terms of this Agreement shall be null and void. In such case, the Parties shall so notify the courts having jurisdiction over any applicable litigation and shall take such other steps as are consistent therewith. It is provided however, that upon request of any other Party, each party shall have the duty to promptly confirm to the other party (a) which, if any, conditions precedent it contends remain unsatisfied, and (b) if all conditions precedent have been satisfied or waived that all provisions of the Agreement, including the release provisions contained in paragraph 10 are in full effect.

5.  Notice of Approval. Promptly after receiving Court Approval, Each Party shall give notice thereof to the other. Each shall promptly provide the other Party with such evidence as the other Party may reasonably request to independently verify the validity and finality of such Court Approval.

6.    Full Effectiveness.  Upon satisfaction of all conditions provided for in this Agreement including receipt by each Party of notice of Court Approval and of such evidence of the validity and finality of such Court Approval as each Party may reasonably have requested, this Agreement shall become fully effective ("Effective Date").

7.    Additional Obligations Pending Court Approval and Satisfaction of Conditions.  So long as the deadline for obtaining Court Approval and for obtaining satisfaction of all conditions of this Agreement has not expired, the Parties shall have the following additional obligations:

The Parties shall cooperate to obtain such orders as will toll and extend all deadlines otherwise applicable to prosecution and defense of any actions pending between them and in the Ehee Bankruptcy Case and to obtain such orders as will otherwise permit the suspension of such litigation pending Court Approval and Full Effectiveness of this Agreement.

8.    Edward Ehee's Settlement Obligations.  As of the Effective Date, Edward Ehee shall have the following obligations in consideration of the provisions of this Agreement:

(a)    Edward Ehee shall consent to entry of a nondischargeable money and declaratory judgment in favor of Roosevelt substantially in the form attached hereto as Exhibit A (the "Nondischargeable Judgment") enforcement of which shall be subject to the forbearance and other provisions contained therein.

(b)    Edward Ehee shall consent to the immediate entry of an Order for Relief in the Ehee Bankruptcy Case.

Settlement Agreement – Edward Ehee/ AAG Roosevelt

Page 7 of 18

9.   Roosevelt's Settlement Obligations. As of the Effective Date, Roosevelt shall have the

     following obligations in consideration of the release and other provisions of this

     Agreement:

     (a)   Roosevelt shall have entered into a Settlement Argument with Jennifer Ehee

           substantially in the form attached hereto as Exhibit B.

10.  Pre-conditions for Full Effectiveness. The following pre-conditions apply and must be

     satisfied or waived by both Parties prior to the Full Effectiveness of this Agreement:

     (a)   The Commission shall have approved and executed the Ehee Commission

           Settlement substantially in the form proposed by the parties thereto as of the

           execution of this Agreement and such settlement shall be in full force and effect.

           Specifically but not in limitation of the foregoing: The U.S. District Court, N.D.

           California shall have approved the Ehee Commission Settlement substantially in

           form as proposed and shall have assumed jurisdiction over the collection and

           disbursement of the Commission Fund as contemplated by the Ehee Commission

           Settlement as proposed as of the date of this Agreement.

     (b)   Jennifer Ehee, has executed an agreement with Roosevelt substantially in the form

           attached hereto as Exhibit B.

     (c)   The U.S. District Court shall have issued its order retaining jurisdiction over all

           matters or disputes that are subject to its approval or supervision under this and all

           related agreements.

Settlement Agreement – Edward Ehee/ AAG Roosevelt

Page 8 of 18

10874926.7

11.    <u>Mutual Releases</u>.

(a)    Except for such obligations, rights, judgments, or claims as may be created by or arise out of the terms and conditions of this Agreement, and/or the judgment to be entered, and effective upon the Effective Date, Roosevelt on the one hand, and Edward Ehee on the other hand, hereby release and absolutely and forever discharge the other party and their past and present attorneys, officers, employees, shareholders, agents, assigns, and successors ("Releasees"), of any and all obligations, claims, liens, demands, causes of action, damages, expenses, and liabilities, known or unknown, arising from, related, or connected in any way to Roosevelt and Edward Ehee, including, but not limited to: (i) Roosevelt's Claims, (ii) all facts, issues, or matters related to or arising from Roosevelt's Claims, and (iii) all matters and events described in any litigation pending between the Parties (including the Roosevelt Action) or which could have been pleaded therein.

(b)    This release and Paragraph 17 of this Agreement do not preclude Roosevelt from asserting any claim against any or all of the bankruptcy estates created pursuant to the applicable Bankruptcy Cases including any allowed claims under Bankruptcy Code Sect. 503(b)(3)(A).

12.    <u>Waiver of California Civil Code Section 1542</u>. The parties hereby agree that this Agreement applies to all injuries and damages, whether known or unknown, and whether now existing or which may result in the future relating to this matter. In further consideration of the Agreement, the parties agree to and do hereby waive and relinquish all rights under Section 1542 of the California Civil Code, which reads as follows:

Settlement Agreement – Edward Ehee/ AAG Roosevelt

Page 9 of 18

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

13. Representation and Warranties. The parties to this Agreement, and each of them, represent and warrant to each other party hereto as follows:

(a) Each of the parties hereto has received independent legal advice from attorneys of his, her or its own choice, with respect to the advisability of making the settlement and releases provided for herein, and with respect to the advisability of executing this Agreement by each party, that party's attorneys reviewed this Agreement at length;

(b) In negotiating this Agreement, each party and his, her or its attorneys have made various statements and representations to other parties and their attorneys. Nevertheless, each party specifically does not rely upon any statement, representation, legal opinion, or promises of any other party in executing this Agreement or in making the settlement provided for herein, except as expressly stated in this Agreement;

(c) Each party, together with his, her or its separate counsel, has made such investigation of the law pertaining to this settlement and this Agreement, and of all the matters pertaining thereto, as he, she or it deems necessary;

Settlement Agreement – Edward Ehee/ AAG Roosevelt

Page 10 of 18

(d)     This Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by, each person executing this Agreement;

(e)     Each party hereto represents and warrants to the other party hereto that he, she or it is the sole and lawful owner of all right, title and interest in and to every claim described in the recitals to this Agreement or released herein, and that he, she or it has not transferred or assigned, or purported to transfer or assign, any released Claim or property interest. Each Parties' notice to the other that it has received Court Approval of this Agreement shall constitute a representation and warranty to the other of such notice. Roosevelt warrants that it has the sole authority to settle this matter on its behalf and that no lien, charge, or encumbrance in favor of any third party exists with respect to the claims it has asserted.

(f)     Additional Warranties:

(i)     Edward Ehee warrants to Roosevelt that the information contained in the financial disclosure form dated May 14, 2007 provided to the SEC and delivered to Roosevelt was and remains accurate in all material respects; and

(ii)    Edward Ehee represents and warrants that he has obtained the advice of counsel in connection with his entry into the agreement and in particular his agreement to assert to the entry of the Non-dischargeable Judgment.

14.    Entire Agreement. Each Party represents and warrants that no promise, inducement, or agreement not expressed herein has been made to such Party in connection with this Agreement, and that this Agreement constitutes the entire Agreement between the Parties

and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.

15. Execution in Counterparts. This Agreement may be executed in counterparts, each of which will be deemed an original document, but all of which will constitute a single document.

16. No Admissions. Each Party acknowledges that, with the exception of those terms contained in the Non-dischargeable Judgment attached hereto as Exhibit A, the consideration referred to and the other terms of this Agreement do not constitute an admission or concession of liability or of any fact.

17. Costs and Expenses. Each Party agrees to be responsible for and to bear its own costs, expenses and attorneys' fees incurred and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

18. Forum Selection. Until the Bankruptcy Case has been closed, any dispute, action or proceeding arising out of or relating to this Agreement shall be within the exclusive jurisdiction of the Court having jurisdiction over the Bankruptcy Case and the Roosevelt Action. The Parties consent to the Jurisdiction of the courts of the State of California and to the personal jurisdiction of the United States District Court for the Northern District of California for the purposes of resolution of any such dispute, action or proceeding not within the exclusive jurisdiction of the Court having jurisdiction over the Bankruptcy Case.

19.   Severability. In the event that any provision of this Agreement should be held to be void, voidable, or unenforceable, the remaining portions hereof shall remain in full force and effect.

20.   Modification. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a writing duly executed by authorized representatives of each of the Parties. Each Party hereby agrees that such Party will make no claim at any time or place that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character.

21.   Governing Law. This Agreement shall be construed in accordance with, and be governed by the laws of the State of California without regard its rules governing choice of law.

22.   Survival of Warranties and Representations. The warranties and representations of this Agreement are deemed to survive the date of execution hereof.

23.   Representative Capacity. Each person executing this Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

24.   Participation in Drafting. Each party has participated in, cooperated in, or contributed to the drafting and preparation of this Agreement. In any construction of this Agreement the same shall not be construed for, or against, any party, but shall be construed fairly according to its plain meaning.

25.   Execution of Further Documents. Each party hereto will execute all further and additional documents as may be necessary and reasonable to effectuate and carry out the provisions of this Agreement.

10874926.7

26.   Facsimile and Electronically Transmitted Signatures. The signatories hereto may execute and transmit their respective signature pages by facsimile (including any form of electronically transmitted image) each of which shall be deemed an original counterpart binding upon the signatory as is if an original.

27.   Covenant of Good Faith. The Parties hereto, and each of them, individually and collectively, agree to do all the things necessary or convenient to carry out and effectuate the terms of this Agreement, including, without limitation, the drafting, executing and serving of any appropriate documents or pleadings, and not to do or fail to do anything, directly or indirectly, which will interfere with the terms and conditions thereof or adversely affect any of the rights provided for herein.

28.   Gender and Plurals. Whenever in this Agreement the context may require, the masculine gender shall be deemed to include the feminine and/or neuter, and vice versa, the singular to include the plural, and vice versa.

29.   Notices. Any notice provided for in this Agreement and any other notice, demand or communication required or permitted to be given hereunder (or under the Non-dischargeable Judgment) or which any Party may wish to send to another ("Notice" or "Notices") shall be in writing and shall be deemed to have been properly given if served by (a) personal delivery or (b) registered or certified U.S. mail, or by comparable private carrier, First Class, return receipt requested in a sealed envelope, postage or other charges prepaid, or (c) telegram, telecopy, facsimile, telex or similar form of communication, addressed to the Party for whom the Notice is intended as follows:

If to Edward Ehee

Edward Ehee
1159 Arrowfield Way
San Ramon, California 94582-4682

with copy to:

James D. Wood, Attorney at Law
3675 Mt. Diablo Blvd., Ste. 250
Lafayette, CA  94549-3775
E-Mail: jdw@jdwoodlaw.com
Fax. (925) 283-9663

If to Roosevelt:

Kal Salama, CFA
A.A.G. Roosevelt Fund, L.P.
336 Bon Air Center #364
Greenbrae, CA 94904

with copy to:

Richard C. Pedone, Esq.
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Fax: 866.947.1890
rpedone@nixonpeabody.com

Any Party to this Agreement may change its address for Notice from time to time by

notice given in accordance with the foregoing provisions.  Any notice delivered to

another party by electronic mail shall be sufficient in lieu of the use of the foregoing

mechanisms only if timely receipt thereof is expressly acknowledged by the party so

notified.  Each party shall have the duty whenever practical and when requested to

expressly acknowledge in good faith any notice actually received by electronic mail.

30.     Waiver.  The failure of any Party to insist, in any one or more instances, on performances

of any of the terms and conditions of this Agreement shall not be construed as a waiver or

relinquishment of any rights granted hereunder or of the future performance of any such

term, covenant or condition, but the obligations of the Parties with respect thereto shall

continue in full force and effect.

Settlement Agreement – Edward Ehee/ AAG Roosevelt

Page 15 of 18

10874926.7

31.  Notice of Certain Payments. Edward Ehee will not make any payment(s) on any debt which arose as a result of events occurring prior to January 12, 2007, without first providing Roosevelt with ten (10) days notice of said contemplated payment(s) including in such notice the party to be paid and a description of the debt.

32.  Headings. The headings contained in this Agreement have been inserted for the convenience of reference only and shall in no way restrict or modify any of the terms or provisions hereof.

33.  Time Periods. Except as otherwise provided for in this Agreement, all references herein to "days" shall mean calendar days.

34.  Time is of the Essence. All times and dates in this Agreement, and each and every provision hereof in which time is an element, are of the essence; provided, however, that the time period for exercising any right, option or election provided in this Agreement or the time period for the performance of any act required hereunder falls on a Saturday, Sunday or legal or bank holiday, then such time period shall be automatically extended through the close of business on the next regularly scheduled business day.


[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

02/01/2008  12:03    9252771495          FEDEX KINKOS 5154                PAGE  01

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties hereto have each approved and executed this

Agreement on the dates set forth opposite their respective signatures.

DATED: 2/1/08                      *Edward Ehee* (signature)

                                   Edward Ehee


                                   AAG Roosevelt Fund, L.P. ("Roosevelt")

DATED:_____             By:_____

                                   Its:_____

EXECUTION COPY

IN WITNESS WHEREOF, the Parties hereto have each approved and executed this Agreement on the dates set forth opposite their respective signatures.

DATED: _____

_____
Edward Ehee

DATED: 2/1/08

AAG Roosevelt Fund, L.P. ("Roosevelt")

By: KHALED SALAMA

Its: PRESIDENT OF G.P.

Settlement Agreement – Edward Ehee/ AAG Roosevelt

Page 17 of 18

10834926.7

**EXECUTION COPY**

## Index to Exhibits

Form of Proposed Money and
Declaratory Judgment against Edward
Ehee in favor of Roosevelt.................................................................................A

Form of Proposed Agreement between
Jennifer Ehee and Roosevelt ............................................................................B

Settlement Agreement – Edward Ehee/ AAG Roosevelt

Page 18 of 18

10874926.7

EDWARD EHEE / AAG ROOSEVELT SETTLEMENT AGREEMENT

EXHIBIT A

**Proposed Money and Declaratory Judgment**
**Exhibit A to Settlement Agreement**

**[Roosevelt v. Ehee**
**Caption of Court Exercising jurisdiction over Ehee Bankruptcy Case]**

The parties having consented to the relief provided for herein by joint application dated

_____, both represented by counsel, and good cause appearing,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Court determines and declares that pursuant to 11 U.S.C. §523(a), and not

withstanding any other provision of 11 U.S.C. § 523 or § 727, any discharge entered of Edward

Sewon Ehee, aka Edward Ehee (the "Defendant"), at this time or in connection with any future

bankruptcy proceeding, has not and will not discharge Defendant of any debt or obligation owing

to A.A.G. Roosevelt Fund, L.P. or if applicable, to any assignee or transferee of this Judgment

(the "Plaintiff") under this Judgment.

2.      Plaintiff is awarded judgment in the amount of $1,400,000 against Defendant

Edward Sewon Ehee, aka Edward Ehee.  Interest shall accrue pursuant to 28 U.S.C. §1961 at the

rate applicable provided however, that interest shall not be compounded.

3.      The Court determines and declares that:

(a)     This Judgment and this Court's jurisdiction related thereto will survive any

        dismissal, conversion, or closure of the Bankruptcy Case to which this action is

        related and any future bankruptcy cases, whether voluntary or involuntary,

        involving the Defendant as a debtor.

(b)     The determinations, reservation of jurisdiction and procedures followed in

        connection with the Court's approval this Judgment are duly authorized by law.

# EXHIBIT A to Settlement Agreement

    (c)    Any payment received by Plaintiff in respect of any of the Bankruptcy Cases to which this case relates (U.S. Dist. Ct. N.D. Cal. Case Nos. C-07-3995, C-07-3996 and C-07-3997 (other than any payment in respect of any claim under Bankruptcy Code Sect. 503(b)(3)(A)) and any payments received by Plaintiff in respect of any equitable plan of distribution adopted by the Court in reference to the disgorgement of any property related to the securities litigation underlying the above captioned case shall be credited against this Judgment, first to outstanding interest, and then to unpaid principal.

4.    The Court reserves jurisdiction to enforce and interpret this Judgment even if the Bankruptcy Case to which this Action is related is closed, dismissed or converted to another chapter.

5.    No costs or attorneys' fees shall be allowed upon entry of this Judgment. Post-Judgment attorneys' fees shall not be added.

6.    A stay of enforcement of this Judgment is granted until the termination of the "Forbearance Period" as hereinafter defined:

    (a)    "Forbearance Period" means the time period beginning at the entry of this Judgment and ending December 31, 2009 unless terminated earlier as set forth herein.

    (b)    The Forbearance Period will terminate automatically thirty (30) business-days after notice to Defendant in any or all of the following circumstances unless Defendant requests a hearing with the Court on the issue within such thirty (30) day period. If the Defendant timely requests a hearing, the Forbearance Period

# EXHIBIT A to Settlement Agreement

- 2 -

will terminate immediately upon the Court's determination that any of the events described below has occurred and shall otherwise remain in effect. It is provided, however, that the Court shall retain the discretionary power to maintain the Forbearance Period, notwithstanding such events, based upon the materiality or the Defendant's correction or cure of each such event:

(i)     Any of Defendant's warranties or representations made in connection with the agreement resulting in the entry of this Judgment is materially untrue; or

(ii)    The Defendant, subsequent to entry of this Judgment, makes an intentional fraudulent conveyance or transfer of any of his assets; or

(iii)   The Defendant has (a) failed to deliver a complete and accurate financial statement, whether on the basis of the assertion of any constitutional privilege or otherwise, and (b) that as a result thereof, Plaintiff's ability to levy under this Judgment upon termination of the Forbearance Period is likely to be materially impaired.

(c)     During the Forbearance Period, Plaintiff will forbear from seeking to enforce or otherwise collect on this Judgment through levy or otherwise including any act to obtain a judgment lien on the Defendant's property. The Defendant shall provide the Plaintiff with actual notice within five (5) days of becoming aware of any judgment lien being entered against him or his property. Notwithstanding the Forbearance Period, the Plaintiff retains any right it may have to commence an involuntary bankruptcy against the Defendant.

# EXHIBIT A to Settlement Agreement

10874929.6

7.    Notwithstanding the Forbearance Period, the Plaintiff may obtain the issuance of one or more writs of execution but no levy may be made hereunder during the Forbearance Period.

8.    During the Forbearance Period, Defendant shall:

(a)    Notify Plaintiff of Defendant's current address and employer; and

(b)    On a semi-annual basis, and subject to any constitutional privilege, accurately complete and deliver a financial statement to the Plaintiff in a form attached hereto as **Exhibit A**.

9.    Except as explicitly modified herein, the Plaintiff shall have all rights of a judgment creditor.

10.    As an incentive to induce payments, the Plaintiff will credit certain payments received from Defendant against this Judgment at a rate of more than $1.00 per $1.00 actually received as shown in the following "Crediting Ratios Table" under the column labeled "Crediting Ratio" applicable to the row designed for the period of time during which the payment is received as specified under the columns labeled "Date Period Begins" and "Date Period Ends" up to the "Maximum Credit" shown for each such row:

Crediting Ratios Table

| Row Num. | Date Period Begins | Date Period Ends | Crediting Ratio (Ratio of Dollars paid to Dollars Credited) | Maximum Credit (Maximum Credit allowable at this Ratio) |
|---|---|---|---|---|
| 1 | Effective upon entry of this Judgment | Two years after termination of Forbearance Period | $2.00 to $1.00 | 20% of original face amount of judgment |

# EXHIBIT A to Settlement Agreement

- 4 -

| Row Num. | Date Period Begins | Date Period Ends | Crediting Ratio (Ratio of Dollars paid to Dollars Credited) | Maximum Credit (Maximum Credit allowable at this Ratio) |
|---|---|---|---|---|
| 2 | Two years after termination of Forbearance Period | Three years after termination of Forbearance Period | $1.80 to $1.00 | 15% of original face amount of judgment |
| 3 | Three years after termination of Forbearance Period | Four years after termination of Forbearance Period | $1.60 to $1.00 | 15% of original face amount of judgment |
| 4 | Four years after termination of Forbearance Period | Five years after termination of Forbearance Period | $1.40 to $1.00 | 15% of original face amount of judgment |
| 5 | Five years after termination of Forbearance Period | Six years after termination of Forbearance Period | $1.20 to $1.00 | 15% of original face amount of judgment |
| 6 | Six years after termination of Forbearance Period | All later dates | $1.00 to $1.00 | Not Applicable |

11.    Plaintiff's rights hereunder, and under any execution that may issue, are fully assignable or transferable, and the term Plaintiff, as used herein, shall refer to any subsequent holder of the rights granted by this Judgment.

Dated:_____

_____
United States District Judge

# EXHIBIT A to Settlement Agreement

- 5 -

EDWARD EHEE DECLARATORY JUDGMENT
EXHIBIT A
(STATEMENT OF FINANCIAL AFFAIRS)

## STATEMENT OF FINANCIAL CONDITION OF
## EDWARD EHEE

I.     Statement of Assets and Liabilities as of _____ :

A.     Assets:

List all assets owned by you, directly or indirectly, including any community property, and all assets which are subject to your possession, enjoyment, or control, regardless of whether legal title or ownership is held by a relative, trustee, lessor, or any other intermediary, including but not limited to the categories indicated below.

| | | |
|---|---|---|
| 1. | Cash | _____ |
| 2. | Cash Surrender Value of Insurance | _____ |
| 3. | Accounts Receivable | _____ |
| 4. | Loans or Notes Receivable | _____ |
| 5. | Real Estate | _____ |
| 6. | Furniture and Household Goods | _____ |
| 7. | Automobiles (Leased automobile - amount of remaining payments.) | _____ |
| 8. | Securities | _____ |
| 9. | Partnership Interests | _____ |
| 10. | Net Value of Ownership Interest in Business | _____ |
| 11. | Individual Retirement Accounts (IRAs) | _____ |
| 12. | Keogh Accounts or Plans | _____ |
| 13. | 401(k) Accounts or Plans | _____ |
| 14. | Other Pension Assets | _____ |
| 15. | Annuities | _____ |
| 16. | Prepaid Expenses or Liabilities | _____ |
| 17. | Credit Balances on Credit Cards | _____ |
| 18. | Other (Itemize) | _____ |
| 19. | _____ | _____ |
| | Total Assets | _____ |

10883826.2

- 2 -

B.    Liabilities:

List all liabilities, including but not limited to the items listed below.

|  |  |  |  |
|---|---|---|---|
| 1. | Mortgages | _____ |
| 2. | Auto Loans | _____ |
| 3. | Credit Card Debt | _____ |
| 4. | Loans on Insurance Policies | _____ |
| 5. | Installment Loans | _____ |
| 6. | Other Loans or Notes Payable | _____ |
| 7. | Accrued Real Estate Taxes | _____ |
| 8. | Judgments/Settlements Owed | _____ |
| 9. | Other (Itemize): | _____ |
| 10. |  | _____ |
| 11. | Leased Automobile - Remaining Payments | _____ |
| 12. | Internal Revenue Service | _____ |
| 13. | Illinois Department of Revenue | _____ |
|  | Total Liabilities | _____ |

C.    Net Worth (Assets Minus Liabilities)                              _____

D.    For each asset with a fair market value of greater than $1000, describe the asset, state the form of ownership (e.g., individual, joint, beneficial interest), provide a fair market value and explain how fair market value was determined (e.g., appraisal, comparison, estimate, etc.).

E.    For each liability, indicate the date incurred, the original amount of the liability; the length of the obligation; the interest rate, the collateral or security; if any, who is responsible for the obligation; the outstanding balance; the name(s) and address(es) of all obligee(s); and your relationship (if any) to each creditor.

- 3 -

F.  List all securities or commodities brokerage accounts and accounts at banks or other financial institutions in your name; under your control; in which you have or had a beneficial interest; or to which you are or were a signatory since your last statement of financial affairs. For each account, specify the location of the account, account number and balance in cash or securities.

G.  List any 401(k) plans, pension plans, Keogh plans, individual retirement accounts, profit sharing plans, thrift plans, life insurance policies or annuities, in which you have an interest, vested or otherwise. For each account or plan, specify the account name, the location of the account, account number and balance, and the terms of withdrawal or loan options.

H.  List all credit cards or liens of credit in your name or to which you are a signatory, including the name of the credit issuer, account number, credit limit, and amount of indebtedness.

- 4 -

II.    Cash Flow Information

A.    Income/Receipts

List all money or other income received from any source on a monthly basis by you, including any community property, money or income received by your spouse, identifying the source recipient, and amount. For any income received on a basis other than monthly, convert to a monthly basis for the purpose of this statement.

| Description | | Source | Amount | Recipient |
|---|---|---|---|---|
| 1. | Salary/Wages | | | |
| 2. | Commissions/Advances | | | |
| 3. | Consulting Fees | | | |
| 4. | Dividends | | | |
| 5. | Interest | | | |
| 6. | Annuities | | | |
| 7. | Pensions | | | |
| 8. | Rents/Royalties | | | |
| 9. | Sales of Assets (Net) | | | |
| 10. | Repayment of Loans | | | |
| 11. | Payments on obligations made on your behalf by others | | | |
| 12. | Fringe Benefits (e.g., car) | | | |
| 13. | Alimony/Child Support | | | |
| 14. | Gifts/Bonuses | | | |
| 15. | Other (Itemize) | | | |
| 16. | _____ | | | |
| Total Receipts | | | | |

- 5 -

B.    Expenses/Disbursements

List all monthly expenditures for whatever purpose for you or your household for the past six (6) months, identifying the purpose and the amount, including projected expenses. For any expenditure which varies from month to month, indicate a range of amounts and the average amount on a monthly basis.

| Description | | Amount |
|---|---|---|
| 1. | Mortgage/Rent | |
| 2. | Food | |
| 3. | Utilities (Electric/Gas, Water, Telephone) | |
| 4. | Payment on Loans | |
| 5. | Real Estate Taxes (include in Mortgage) | |
| 6. | Insurance Premiums (Homeowner's, Auto, Health) | |
| 7. | Medical Expenses | |
| 8. | Automobile Expenses | |
| 9. | Alimony/Child Support | |
| 10. | Income Taxes | |
| 11. | Other Expenses (Itemize) | |
| 12. | Home Security System | |
| 13. | Cellular Phone | |
| 14. | Garbage Collection | |
| 15. | _____ | |
| | Total Expenses/Disbursements | |

*If you anticipate unusual expenses in the coming six (6) months, please describe them.

- 6 -

III.    Other Information

    A.    List

    B.    List all transfers of cash in an amount of $1000 or more, or assets or property with a cost or fair market value of $1000 or more, made by your since your last statement of financial condition, and, if applicable, identify the value of the asset, the consideration received, and the relationship of the transferor to the transferee, or indicate that no such transfers have been made.

    C.    Identify any financial institution accounts (other than those identified in Item I.F. above) in which you have deposited more than $1000 since your last statement of financial condition, or indicate that no such deposits have been made.

    D.    List all dependents, their ages, and whether or not they reside with you.

    E.    Attach any financial statement which the declarant has prepared your last statement of financial condition for any purpose (e.g., such as a financial statement provided to a bank to secure a loan).

    F.    *Attach copies of documents evidencing all outstanding loans for which you are either a lender or borrower.*

- 7 -

G.    *Attach copies of all securities, commodities, bank, or other financial institution account statements for the past six (6) months in your name, under your control, or in which you have a beneficial interest including any community property interest.*

Under penalties of perjury, under the law of the United States, I declare that I have examined the information given in this statement, and attached hereto, and, to the best of my knowledge and belief, it is true, correct, and complete. I further declare that, to the best of my information and belief, I have no assets, owned either directly or indirectly, or income of any nature other than as shown in, or attached to, this statement.

_____        _____
Edward S. Ehee                                                        DATE

# EDWARD EHEE / AAG ROOSEVELT SETTLEMENT AGREEMENT

## EXHIBIT B

EXECUTION COPY

## SETTLEMENT AGREEMENT

## RECITALS

A.   This Settlement Agreement And Mutual Release (the "Agreement") is made and entered
     into by and between Jennifer Ehee ("Jennifer Ehee") and AAG Roosevelt Fund, L.P.
     ("Roosevelt"). Jennifer Ehee and Roosevelt are sometimes collectively referred to herein
     as the "Parties" and individually as a "Party."

B.   On November 11, 2006, the Securities and Exchange Commission (the "Commission")
     filed a complaint against Viper Capital Management, LLC, Compass Fund Management,
     LLC, Edward Ehee, Compass West Fund, LP, Viper Founders Fund, LP, Viper
     Investments, LP, Albert Ehee, Robert Ehee, and Jennifer Ehee (collectively, the
     "Commission Action Defendants") alleging various securities fraud violations in the
     United States District Court for the Northern District of California (San Francisco
     Division) initiating Case No. 06-6966 (the "Commission Action").

C.   Edward Sewon Ehee and Jennifer Ehee are husband and wife.

D.   On November 22, 2006, Roosevelt filed a complaint (the "Roosevelt Complaint") against
     the Edward Ehee, Compass Fund Management, LLC, Compass West Fund L.P., Albert
     Ehee, Robert Ehee, and Jennifer Ehee (the "Roosevelt Action Defendants") alleging, inter
     alia, violation of federal securities laws; breach of contact; unjust enrichment; breach of
     fiduciary duty; fraud; conspiracy to commit fraud; negligent misrepresentation;
     fraudulent conveyance; constructive fraudulent conveyance; violation of Cal. Bus. &
     Prof. Code §17200; constructive trust; and seeking declaratory relief, in the United States
     District Court for the Northern District of California (San Francisco Division) Case No.

10870461.6

06-7270 (the "Roosevelt Action" and "Roosevelt's Claims"). Edward Ehee and Jennifer Ehee did not timely file a response to the Roosevelt Complaint.

E.    On January 12, 2007 (the "Petition Date"), Roosevelt filed involuntary petitions against Compass West Fund LP, ("Compass West Fund") Compass Fund Management ("Compass Management"), and Edward Ehee (collectively, the "Debtors") under chapter 7 of Title 11 United States Code (the "Bankruptcy Code") with the U.S. Bankruptcy Court Northern District of California (the "Bankruptcy Court") thereby by commencing: In re Compass West Fund L.P. Bankruptcy Case No. 07-40130 (subsequently re-designated as U.S. Dist. Ct. N.D. Cal. No. 07-3997 SI upon the district court's withdrawal of reference to the bankruptcy court as recited below) (the "Compass West Bankruptcy Case"), In re Compass Fund Management Bankruptcy Case No. 07-40129 (subsequently re designated as U.S. Dist. Ct. N.D. Cal. No. 07-3995 SI upon the district court's withdrawal of reference to the bankruptcy court as recited below) (the "Compass Fund Management Bankruptcy Case"), and In re Edward Sewon Ehee, Bankruptcy Case No. 07-40126 (subsequently re designated as U.S. Dist. Ct. N.D. Cal. No. 07-3996 SI) (the "Ehee Bankruptcy Case") (collectively, the "Bankruptcy Cases"). Commencement of each of the Bankruptcy Cases created bankruptcy estates referred to collectively herein as the "Bankruptcy Estates".

F.    On or about February 28, 2007, Edward Ehee having previously stipulated with Roosevelt to extend the deadline to respond to the involuntary petitions in each of the Bankruptcy Cases to that date, timely answered the involuntary petition filed against him. No order for relief has been entered in the Ehee Bankruptcy Case and it remains open.

Neither Compass West Fund nor Compass Management responded to the involuntary petitions filed against them.

G.    On June 27, 2006, the U.S. District Court. N.D. California withdrew the reference of the Bankruptcy Cases from the Bankruptcy Court and assumed jurisdiction thereof as cases related to the Commission Action and the Roosevelt Action under newly assigned case numbers as recited above.

H.    Roosevelt has alleged in connection with the involuntary petitions commencing the Bankruptcy Cases that certain of the Roosevelt Action Defendants, including Jennifer Ehee, received fraudulent or otherwise improper transfers from Edward Ehee, and/or Compass West Fund, and/or Compass Management.

I.    Edward Ehee has executed a proposed agreement with the Commission providing for the settlement of the Commission Action (the "Ehee Commission Settlement"). The Ehee Commission Settlement is now awaiting approval by the Commission. Among other things, the Ehee Commission Settlement contemplates that the U.S. District Court will adopt a plan pursuant to its equitable powers providing for the distribution of various property to be disgorged by Edward Ehee and/or others as proposed by the Commission (the "Commission Fund"). The Ehee Commission Settlement further contemplates that Edward Ehee would sell his home located at 6122 Acacia Ave., Oakland, California ("6122 Acacia Ave.") submit all proceeds net of liens and selling expenses of such sale for distribution pursuant to such plan, and that he would waive any exemption rights including any homestead claim therein. Ehee sold the Acacia Ave. subsequent to his execution of the Ehee Commission Settlement and the proceeds thereof, net of liens and

10870461.6

other items paid from escrow have been or are now being transferred to the registry of the district court pursuant to its order.

J.    Simultaneously with the execution of this Agreement, Edward Ehee has entered into a settlement agreement with Roosevelt in the Ehee Bankruptcy Case consenting to, inter alia, (i) the entry of an order for relief in the Ehee Bankruptcy Case and (ii) the entry of a judgment in the Roosevelt Action.

K.    The Parties wish to compromise and settle fully and finally the disputes described above for the mutual promises and undertakings set forth herein and for other good and valuable consideration, the receipt of which is hereby acknowledged.

NOW, THEREFORE, the Parties hereby agree as follows:

## AGREED TERMS

1.    Recitals. The recitals and terms defined as set forth above are incorporated herein as though fully set forth but shall not constitute admissions of any party to this Agreement except to the extent they are adopted hereinafter as warranties by the respective Parties.

2.    Homestead Waiver. Effective and contingent upon the full execution and effectiveness of the Ehee Commission Settlement and not contingent on Court Approval of this Agreement, Jennifer Ehee waives any community property exemption and homestead claim that she may have to the property located at 6122 Acacia Ave. and the proceeds of the sale thereof which will be deposited in the Commission Fund.

3.    Effectiveness of Agreement. The obligations set forth in paragraph 2 "Homestead Waiver" shall be effective upon execution of this Agreement.

10870461.6

4.    Full Effectiveness.  Upon satisfaction of all Pre-conditions provided for in

paragraph 7 of this Agreement, this Agreement shall become fully effective ("Effective Date").

5.    Jennifer Ehee's Settlement Obligations.  As of the Effective Date, Jennifer Ehee

shall have the following obligations in consideration of the provisions of this Agreement:

(a)    Jennifer Ehee shall execute all necessary documents including the execution of

that certain formal disclosure dated May 14, 2007, annexed hereto as **Exhibit A**,

identifying all the known assets of Edward and Jennifer Ehee;

(b)    Jennifer Ehee shall not make any claim to the proceeds of the sale of 6122

Arcadia Ave., which shall be deposited in the registry of the District Court;

(c)    Jennifer Ehee shall cooperate with the Bankruptcy Trustees' reasonable requests

as they carry out their duties under the Bankruptcy Code to the extent required by

law.

6.    Roosevelt's Settlement Obligations.  As of the Effective Date, Roosevelt shall

have the following obligations in consideration of the release and other provisions of this

Agreement:

(a)    Roosevelt shall dismiss Jennifer Ehee from the Roosevelt Action, without

prejudice, and hereby covenants not to sue Jennifer Ehee, and releases her from

any claim Roosevelt may have in connection with:

(i)    Jennifer Ehee's receipt of the $35,000 in cash transferred to her and

reflected on the bank statements attached hereto as **Exhibit B**;

(ii)    Any claim or cause of action that Roosevelt has alleged, or any claim that

is related to any claims or fact alleged by Roosevelt in the Roosevelt

Settlement Agreement – Jennifer Ehee/ AAG Roosevelt
EXHIBIT B to Edward Ehee / AAG Settlment Agreement

Complaint, to the extent that any fact supporting or justifying such claim was or has been disclosed to Roosevelt at any time before or after the filing of such Complaint or is known to Roosevelt on the date it signs this Agreement.

7.  Pre-conditions for Full Effectiveness. The following pre-conditions apply and must be satisfied or waived by both Parties prior to the Full Effectiveness of this Agreement:

(a)  The Commission shall have approved and executed the Ehee Commission Settlement substantially in the form proposed by the parties thereto as of the execution of this Agreement and such settlement shall be in full force and effect. Specifically but not in limitation of the foregoing: The U.S. District Court, N.D. California shall have approved the Ehee Commission Settlement substantially in form as proposed and shall have assumed jurisdiction over the collection and disbursement of the Commission Fund as contemplated by the Ehee Commission Settlement as proposed as of the date of this Agreement.

(b)  Edward Ehee, has executed an agreement with Roosevelt consenting to, inter alia, (i) the entry of an order for relief in the Ehee Bankruptcy Case and (ii) the entry of a judgment in the Roosevelt Action.

8.  Representation and Warranties. The parties to this Agreement, and each of them, represent and warrant to each other party hereto as follows:

(a)  Each of the parties hereto has received independent legal advice from attorneys of his, her or its own choice, with respect to the advisability of making the settlement and releases provided for herein, and with respect to the advisability of executing

this Agreement by each party, that party's attorneys reviewed this Agreement at length;

(b)     In negotiating this Agreement, each party and his, her or its attorneys have made various statements and representations to other parties and their attorneys. Nevertheless, each party specifically does not rely upon any statement, representation, legal opinion, or promises of any other party in executing this Agreement or in making the settlement provided for herein, except as expressly stated in this Agreement;

(c)     Each party, together with his, her or its separate counsel, has made such investigation of the law pertaining to this settlement and this Agreement, and of all the matters pertaining thereto, as he, she or it deems necessary;

(d)     This Agreement has been carefully read by, the contents hereof are known and understood by, and it is signed freely by, each person executing this Agreement;

(e)     Each party hereto represents and warrants to the other party hereto that he, she or it is the sole and lawful owner of all right, title and interest in and to every claim described in the recitals to this Agreement or released herein, and that he, she or it has not transferred or assigned, or purported to transfer or assign, any released Claim or property interest. Each Parties' notice to the other that it has received Court Approval of this Agreement shall constitute a representation and warranty to the other of such notice. Roosevelt warrants that it has the sole authority to settle this matter on its behalf and that no lien, charge, or encumbrance in favor of any third party exists with respect to the claims it has asserted.

EXECUTION COPY

9.    Specific Representations of Jennifer Ehee:  Jennifer Ehee hereby represents and warrants to Roosevelt:

(a)    Jennifer Ehee is not aware of any assets of Edward Ehee or herself, other than those listed in that certain formal disclosure dated May 14, 2007, annexed hereto as **Exhibit A**;

(b)    Other than payments to her children's tuition and normal and ordinary household expenses, Jennifer Ehee has not been the recipient of any transfers from Edward Ehee after October 1, 2004;

10.    Specific Representations of Roosevelt:

(a)    As of the execution of this Agreement, Roosevelt is aware of all facts described in, or revealed by:

(i)    The disclosure dated May 14, 2007, annexed hereto as **Exhibit A**;

(ii)    All documents filed in connection with the Roosevelt Action, the Bankruptcy Cases, the Commission Action, and the Commission Settlement, and

(iii)    The depositions of Edward Ehee and Jennifer Ehee taken in connection with the Roosevelt Action and the Bankruptcy Cases.

(b)    Roosevelt has disclosed to Jennifer Ehee all facts known to Roosevelt forming the basis for any claim that it has asserted against her or believes may exist against her.

Settlement Agreement – Jennifer Ehee/ AAG Roosevelt
EXHIBIT B to Edward Ehee / AAG Settlment Agreement

Page 8 of 13

10870461.6

11.    Entire Agreement. Each Party represents and warrants that no promise, inducement, or agreement not expressed herein has been made to such Party in connection with this Agreement, and that this Agreement constitutes the entire Agreement between the Parties and supersedes all prior or contemporaneous written or oral communications, understandings, and agreements with respect to the subject matter hereof.

12.    Execution in Counterparts. This Agreement may be executed in counterparts, each of which will be deemed an original document, but all of which will constitute a single document.

13.    No Admissions. The consideration referred to and the other terms of this Agreement do not constitute an admission or concession of liability or of any fact.

14.    Costs and Expenses. Each Party agrees to be responsible for and to bear its own costs, expenses and attorneys' fees incurred and not to seek from each other reimbursement of any such costs, expenses or attorneys' fees.

15.    Forum Selection. The Parties consent to the Jurisdiction of the courts of the State of California and to the personal jurisdiction of the United States District Court for the Northern District of California for the purposes of resolution of any such dispute arising under this Agreement.

16.    Severability. In the event that any provision of this Agreement should be held to be void, voidable, or unenforceable, the remaining portions hereof shall remain in full force and effect.

17.    Modification. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect whatsoever except by a

10870461.6

writing duly executed by authorized representatives of each of the Parties. Each Party hereby agrees that such Party will make no claim at any time or place that this Agreement has been orally altered or modified or otherwise changed by oral communication of any kind or character.

18.    Governing Law. This Agreement shall be construed in accordance with, and be governed by the laws of the State of California without regard its rules governing choice of law.

19.    Survival of Warranties and Representations. The warranties and representations of this Agreement are deemed to survive the date of execution hereof.

20.    Representative Capacity. Each person executing this Agreement in a representative capacity represents and warrants that he or she is empowered to do so.

21.    Participation in Drafting. Each party has participated in, cooperated in, or contributed to the drafting and preparation of this Agreement. In any construction of this Agreement the same shall not be construed for, or against, any party, but shall be construed fairly according to its plain meaning.

22.    Execution of Further Documents. Each party hereto will execute all further and additional documents as may be necessary and reasonable to effectuate and carry out the provisions of this Agreement.

23.    Facsimile and Electronically Transmitted Signatures. The signatories hereto may execute and transmit their respective signature pages by facsimile (including any form of electronically transmitted image) each of which shall be deemed an original counterpart binding upon the signatory as is if an original.

24.    Covenant of Good Faith. The Parties hereto, and each of them, individually and collectively, agree to do all the things necessary or convenient to carry out and effectuate the

terms of this Agreement, including, without limitation, the drafting, executing and serving of any appropriate documents or pleadings, and not to do or fail to do anything, directly or indirectly, which will interfere with the terms and conditions thereof or adversely affect any of the rights provided for herein.

     25.    Gender and Plurals.  Whenever in this Agreement the context may require, the masculine gender shall be deemed to include the feminine and/or neuter, and vice versa, the singular to include the plural, and vice versa.

     26.    Notices.  Any notice provided for in this Agreement and any other notice, demand or communication required or permitted to be given hereunder or which any Party may wish to send to another ("Notice" or "Notices") shall be in writing and shall be deemed to have been properly given if served by (a) personal delivery or (b) registered or certified U.S. mail, or by comparable private carrier, First Class, return receipt requested in a sealed envelope, postage or other charges prepaid, or (c) telegram, telecopy, facsimile, telex or similar form of communication, addressed to the Party for whom the Notice is intended as follows:

| | |
|---|---|
| If to Jennifer Ehee | Jennifer Ehee<br>1159 Arrowfield Way<br>San Ramon CA 94582-4682 |
| with copy to: | Andrew K. Jacobson<br>Bay Oak Law<br>180 Grand Ave, Ste 700<br>Oakland, CA 94612<br>E-Mail: andy@bayoaklaw.com<br>Fax. 510.208.5511 |

If to Roosevelt:         Kal Salama, CFA
                         A.A.G. Roosevelt Fund, L.P.
                         336 Bon Air Center #364
                         Greenbrae, CA 94904

with copy to:            Richard C. Pedone, Esq.
                         Nixon Peabody LLP
                         100 Summer Street
                         Boston, MA 02110
                         Fax:  866.947.1890
                         rpedone@nixonpeabody.com

Any Party to this Agreement may change its address for Notice from time to time by

notice given in accordance with the foregoing provisions.  Any notice delivered to

another party by electronic mail shall be sufficient in lieu of the use of the foregoing

mechanisms only if timely receipt thereof is expressly acknowledged by the party so

notified.  Each party shall have the duty whenever practical and when requested to

expressly acknowledge in good faith any notice actually received by electronic mail.

27.     Waiver.  The failure of any Party to insist, in any one or more instances, on

performances of any of the terms and conditions of this Agreement shall not be construed as a

waiver or relinquishment of any rights granted hereunder or of the future performance of any

such term, covenant or condition, but the obligations of the Parties with respect thereto shall

continue in full force and effect.

28.     Headings.  The headings contained in this Agreement have been inserted for the

convenience of reference only and shall in no way restrict or modify any of the terms or

provisions hereof.

29.     Time Periods.  Except as otherwise provided for in this Agreement, all references

herein to "days" shall mean calendar days.

Settlement Agreement – Jennifer Ehee/ AAG Roosevelt
EXHIBIT B to Edward Ehee / AAG Settlment Agreement

Page 12 of 13

10870461.6

EX. CUTION COPY

30.    Time is of the Essence. All times and dates in this Agreement, and each and every provision hereof in which time is an element, are of the essence; provide however, that the time period for exercising any right, option or election provided in this Agreement or the time period for the performance of any act required hereunder falls on a Saturday, Sunday or legal or bank holiday, then such time period shall be automatically extended through the close of business on the next regularly scheduled business day.

31.    Termination. In the event that this Agreement has not become fully effective by March 31, 2008, it shall terminate.

IN WITNESS WHEREOF, the Parties hereto have each approved and executed this Agreement on the dates set forth opposite their respective signatures.

DATED: February 4, 2008

Jennifer Ehee

Jennifer Ehee

AAG Roosevelt Fund, L.P. ("Roosevelt")

DATED: February ___ 2008

By: KHALED SALAMA
Its: PRESIDENT OF G.P.

JENNIFER EHEE / AAG ROOSEVELT SETTLEMENT AGREEMENT

EXHIBIT A

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
STATEMENT OF FINANCIAL CONDITION OF
Edward Ehee

I.    Statement of Assets and Liabilities as of  5/14/2007 :

A.    Assets:

List all assets owned by you, your spouse, or any other member of your
household, directly or indirectly, and all assets which are subject to
your or your spouse's possession, enjoyment, or control, regardless of
whether legal title or ownership is held by a relative, trustee,
lessor, or any other intermediary, including but not limited to the
categories indicated below.

| | | |
|---|---|---|
| 1. | Cash  (Amount in bank accounts subject to asset freeze.) | $7,899 |
| 2. | Cash Surrender Value of Insurance | $0 |
| 3. | Accounts Receivable | $0 |
| 4. | Loans or Notes Receivable | $0 |
| 5. | Real Estate | $1,300,000 |
| 6. | Furniture and Household Goods | $30,000 |
| 7. | Automobiles  (Leased automobile -- amount of remaining payments.) | $24,238 |
| 8. | Securities | $0 |
| 9. | Partnership Interests | $0 |
| 10. | Net Value of Ownership Interest in Business | $0 |
| 11. | Individual Retirement Accounts (IRAs) | $0 |
| 12. | Keogh Accounts or Plans | $0 |
| 13. | 401(k) Accounts or Plans | $5,044 |
| 14. | Other Pension Assets | $0 |
| 15. | Annuities | $0 |
| 16. | Prepaid Expenses or Liabilities | $0 |
| 17. | Credit Balances on Credit Cards | $0 |
| 18. | Other (Itemize) | |
| 19. | | |
| 20. | | |
| | Total Assets | $1,367,181 |

B.  Liabilities:

List all liabilities, including but not limited to the items listed below.

| | | |
|---|---|---|
| 1. | Mortgages | $706,832 |
| 2. | Auto Loans | $0 |
| 3. | Credit Card Debt | $35,274 |
| 4. | Loans on Insurance Policies | $0 |
| 5. | Installment Loans | $6,898 |
| 6. | Other Loans or Notes Payable | $0 |
| 7. | Accrued Real Estate Taxes | $0 |
| 8. | Judgments/Settlements Owed | $0 |
| 9. | Other (Itemize): | |
| 10. | The Bentley School | $25,137 |
| 11. | Leased Automobile — Remaining Payments | $24,238 |
| 12. | Internal Revenue Service | $69,107 |
| 13. | Illinois Department of Revenue | $3,721 |
| | Total Liabilities | $871,205 |

C.  Net Worth (Assets Minus Liabilities)          $495,976

2

D.   For each asset with a fair market value of greater than $1000, describe the asset, state the form of ownership ( e.g., individual, joint, beneficial interest), provide a fair market value and explain how fair market value was determined (e.g., appraisal, comparison, estimate, etc.).

1) Cash, held in accounts at Washington Mutual Bank (Jennifer Ehee $7,664; Edward Ehee $235)
2) House (Oakland, CA), individually owned, $1,300,000  (offer received 2/11/2007)
3) Furniture and Household Items, jointly owned, $30,000 (estimate)
4) Automobile, leased by Jennifer Ehee (payments totaling $24,238 remaining)
5) 401(K) Retirement Account, individually owned, $5,044 (see Item I.G.)

E.   For each liability, indicate the date incurred; the original amount of the liability; the length of the obligation; the interest rate, the collateral or security; if any, who is responsible for the obligation; the outstanding balance; the name(s) and address(es) of all obligee(s); and your relationship (if any) to each creditor.

1) EMC Mortgage Corp., P.O. Box 141358, Irving TX 75014
   Amt. $493,500, Incurred 11/1996, Due 11/2026, Rate Variable, Secured (House), Bal. $448,159
2) Select Portfolio Servicing, P.O. Box 65450, Salt Lake City UT 84165
   Amt. $74,700, incurred 5/1997, Due 5/2017, Rate 12.4%, Secured (House), Bal. $58,673
3) Joong M. Yang, 296 Mather Street, Suite 2, Oakland CA 94611
   Amt. $200,000, Incurred 10/2006, Due 4/2007, Rate 20%, Secured (House), Bal. $200,000
4) Beneficial (HSBC Group), P.O. Box 5240, Carol Stream IL 60197
   Amt. $7,000, Incurred 10/2005, Unsecured, Bal. $6,898
5) The Bentley School, 1 Hiller Drive, Oakland CA 94618
   Amt. $32,740, Incurred 2/2006, Unsecured, Bal. $25,137
6) Internal Revenue Service, P.O. Box 480, Mail Stop 660, Holtsville, NY 11742
   Amt. $45,804, Incurred Tax Year 1997; Amt. $23,303, Incurred Tax Year 2001
7) Illinois Department of Revenue, P.O. Box 19035, Springfield, IL 62794
   Amt. $3,721, Incurred Tax Year 2000

3

F.  List all securities or commodities brokerage accounts and accounts at banks or other financial institutions in your name; under your control; in which you have or had a beneficial interest; or to which      are or were a signato - since

For each account, specify the location of the account, account number and balance in cash or securities.

1) Washington Mutual Bank, #3151753081, Bal. $215
2) Washington Mutual Bank, #4296754796, Bal. $20
3) Washington Mutual Bank, #3121594465, Bal. $7,684 (account individually owned by Jennifer Ehee)
4) Wells Fargo Bank, #01792727755, Account Closed in 2006

G.  List any 401(k) plans, pension plans, Keogh plans, individual retirement accounts, profit sharing plans, thrift plans, life insurance policies or annuities, in which you have an interest, vested or otherwise. For each account or plan, specify the account name, the location of the account, account number and balance, and the terms of withdrawal or loan options.

401(K) Retirement Account (Edward Ehee), John Hancock USA, Contract #70781, Bal. $5,044.04 (as of 3/31/07)

H.  List all credit cards or lines of credit in your name or to which you are a signatory, including the name of the credit issuer, account number, credit limit, and amount of indebtedness.

1) Chase Bank USA, Account #4386163066740730, Limit $5,000, Balance Due $5,721
2) Capital One Bank, Account #4388641414285945, Limit $1,900, Balance Due $2,519

4

II.   Cash Flow Information

A.   Income/Receipts

List all money or other income received from any source on a
monthly basis by you, your spouse, or any other member of your
household, identifying the source, recipient, and amount. For any
income received on a basis other than monthly, convert to a
monthly basis for the purposes of this statement.

| Description | Source | Amount | Recipient |
|---|---|---|---|
| 1.   Salary/Wages | | $0 | |
| 2.   Commissions/Advances | | $0 | |
| 3.   Consulting Fees | | $0 | |
| 4.   Dividends | | $0 | |
| 5.   Interest | | $0 | |
| 6.   Annuities | | $0 | |
| 7.   Pensions | | $0 | |
| 8.   Rents/Royalties | | $0 | |
| 9.   Sales of Assets (Net) | | $0 | |
| 10.  Repayment of Loans | | $0 | |
| 11.  Payments on obligations made on your behalf by others | Sung Pak | $2,000 | Jennifer Ehee |
| 12.  Fringe Benefits (e.g., car) | | $0 | |
| 13.  Alimony/Child Support | | $0 | |
| 14.  Gifts/Bonuses | | $0 | |
| 15.  Other (Itemize) Since 12/2006 | Cash Aid -- CA Department of Social Services | $862 | Jennifer Ehee |
| 16.  Since 12/2006 | Food Stamps -- CA Department of Social Services | $301 | Jennifer Ehee |

Total Receipts                                      $3,163

B.   **Expenses/Disbursements**

List all monthly expenditures for whatever purpose for you or your household for the past 12 months, identifying the purpose and the amount, including projected expenses. For any expenditure which varies from month to month, indicate a range of amounts and the average amount on a monthly basis.

| Description | | Amount |
|---|---|---|
| 1. | Mortgage/Rent  EMC Mtge. (No payments made since 7/2008)  Select Portfolio servicing (No payments made since 12/2008)  J.M. Yang (No payments ever made) | $3,858  $843  $3,333 |
| 2. | Food | $400 |
| 3. | Utilities  (Electric/Gas, Water, Telephone) | $475 |
| 4. | Payment on Loans | $221 |
| 5. | Real Estate Taxes  (Include in Mortgage) | $0 |
| 6. | Insurance Premiums  (Homeowner's, Auto, Health) | $974 |
| 7. | Medical Expenses | $0 |
| 8. | Automobile Expenses | $970 |
| 9. | Alimony/Child Support | $0 |
| 10. | Income Taxes | $0 |
| 11. | Other Expenses  (Itemize) | |
| 12. | Home Security System | $75 |
| 13. | Cellular Phone | $150 |
| 14. | Garbage Collection | $25 |
| 15. | | |

---

**Total Expenses/Disbursements**          $11,125 *

*If you anticipate unusual expenses in the coming 12 months, please describe them.

III. Other Information

A.  List any disbursement having a value of $1000 or more, made on
    your behalf, or on behalf of  our spouse or children,    an
    other  erson or entit   since

                                           , the amount of the
    disbursement, and the name and address of the person or entity
    who made the disbursement.

    1) $19,000.00 Sung Pak, 460 Boundary Oak Way, Walnut Creek, CA 94598
    2) $5,000.00 Sung Pak, 460 Boundary Oak Way, Walnut Creek, CA 94598
    3) $9,653.59 Sung Pak, 460 Boundary Oak Way, Walnut Creek, CA 94598

B.  List all transfers of cash in an amount of $1000 or more, or
    assets or property with a cost or fair market value of $1000 or
    more, made    ou since

                                  , and, if applicable, identify the
    value of the asset, the consideration received, and the
    relationship of the transferror to the transferee, or indicate
    that no such transfers have been made.

    See attached bank statements.

7

C.   Identify any financial institution accounts (other than those
     identified in Item I.F. above) in which you have d   sited more
     than $1000 since
                                  , or indicate that no such deposits
     have been made.

     None

D.   List all dependents, their ages, and whether or not they reside
     with you.

     1) Jennifer Ehee, Spouse, Age 39, Resides with E. Ehee
     2) Ryan Ehee, Son, Age 10, Resides with E. Ehee
     3) Olivia Ehee, Daughter, Age 7, Resides with E. Ehee

E.   Attach federal income tax returns filed by you or on your behalf
     (including personal, trust, or business returns)        the  ears
     throu h   --

F.   Attach any federal gift tax returns filed   _   or   _ s ouse dur' _
     the    ars        throu       .

     None

G.   Attach any financial statement which the declarant has prepared during
     the years ____ through ____ for any purpose (e.g., such as a financial
     statement  rovided to a bank to secure a loan).

                            · None

H.   Attach copies of documents evidencing all outstanding loans for which you
     or your spouse is either a lender or borrower.

     [Staff: .If the defendant should pay combined disgorgement, interest, and
     penalties of $100,000 or more, keep the following request, item III.I.,
     in this document. Otherwise, delete item III.I.]

I.   Attach copies of all securities, commodities, bank, or other financial
     institution account statements for the past 12 months in your or your
     spouse's name, under your or your spouse's control, or in which you or
     your spouse has a beneficial interest.

                            8

Under penalties of perjury, I declare that I have examined the information given in this statement, and attached hereto, and, to the best of my knowledge and belief, it is true, correct, and complete. I further declare that I have no assets, owned either directly or indirectly, or income of any nature other than as shown in, or attached to, this statement. I understand that any material misstatements or omissions made by me herein or in any attachments hereto may constitute criminal violations, punishable under 18 U.S.C. 1001.

_____    5/15/07
                           Date

Sworn before me this 15ᵗʰ day of May , 2007.

_____
        Notary Public

9

**JENNIFER EHEE / AAG ROOSEVELT SETTLEMENT AGREEMENT**

**EXHIBIT B**

**Washington Mutual**

YOUR WAMU FREE CHECKING STATEMENT

P.O. BOX 1098
NORTHRIDGE, CA 91328-1098

**This Statement Covers**
From: 05/13/06
Through: 06/14/06

**Need assistance?**
To reach us anytime,
call 1-800-788-7000
or visit us at wamu.com

JENNIFER EHEE
6122 ACACIA AVE
OAKLAND CA 94618-1819

## Your WaMu Free Checking Detail Information

JENNIFER EHEE    Account Number: 312-159446-5
Washington Mutual Bank, FA

Have you wanted to take a look at your Credit Report? Have you planned to work on your Will but have not had the time? The Financial Insider Network offers Unlimited Credit Reports, a Simple Will, Unlimited Telephone Legal Assistance, 25% savings on Network Attorney Fees with a 30 minute No Charge Consultation, up to 50% savings on Tax Preparation services, and much more. For more information about this program or to enroll, call (800) 984-7458.

### Your Account at a Glance

| | | | |
|---|---|---|---|
| Beginning Balance | $0.00 | Next Anniversary Date | 5/10/07 |
| Checks Paid | -$3,266.41 | Available OD/NSF Fee Waivers | 1 |
| Other Withdrawals | -$17,877.21 | WaMu Debit Rewards | |
| Deposits | +$25,725.00 | This statement period | $0.06 |
| Ending Balance | $4,581.38 | Total since anniversary date | $0.06 |

| Date | Description | Withdrawals (-) | Deposits (+) |
|---|---|---|---|
| 05/15 | Opening Deposit | | $100.00 |
| 05/22 | Customer Deposit | | $400.00 |
| 05/30 | Customer Deposit | | $225.00 |
| 05/30 | MC-SHELL OIL 20455100352 OAKLAND CA | $73.30 | |
| 05/31 | WIRE TRANSFER DEPOSIT | | $25,000.00 |
| 05/31 | FEE: INCOMING DOMESTIC WIRE | $10.00 | |
| 06/01 | POS SAFEWAY STO 5130 BROADWAY OAKLAND CA | $86.88 | |
| 06/01 | POS KOREANA PLAZ 2370 TELEGRAPH AVE., OAKLAND CA | $80.69 | |
| 06/01 | MC-VALERO #7302 WALNUT CREEK CA | $35.99 | |
| 06/02 | MC-GUMPS SAN FRANCISCO CA | $72.00 | |
| 06/02 | MC-ZARA USA INC SAN FRANCISCO CA | $69.44 | |
| 06/02 | MC-TWX*INSTYLE MAGAZINE 800-274-6200 NY | $23.88 | |
| 06/02 | MC-IFSHIN VIOLINS BERKELEY CA | $23.93 | |
| 06/05 | POS TJ TJ MAXX MORAGA CA | $37.84 | |
| 06/05 | MC-US SPORTS CAMPS INC SAN RAFAEL CA | $499.00 | |

10 09-I-89    Page 1 of 2    Deposits are FDIC Insured
Form C5500048 0000056366    X

**Washington Mutual**

This Statement Covers
Account Number: 312-159446-5
From: 05/13/06
Through: 06/14/06

| Date | Description | Withdrawals (-) | Deposits (+) |
|------|-------------|-----------------|--------------|
| 06/05 | PAYBYPHONE-PYMT PHONE PYMT 99901 | $15,000.00 | |
| 06/05 | FRANCHISE TAX BO PAYMENTS 9400640 PM | $701.17 | |
| 06/06 | POS COSTCO WHSE 2400 MONUMENT BLVD. CONCORD CA | $223.85 | |
| 06/06 | MC-E G RIGHELLIS DDS INC OAKLAND CA | $50.00 | |
| 06/08 | POS WESTERN CHRI 210 GOLF CLUB ROAD PLEASANT HILL CA | $29.22 | |
| 06/08 | POS MARSHALLS MARSHALLS PLEASANT HILL CA | $20.55 | |
| 06/08 | POS TARGET T0330 550 CONTRA COSTA BOULEPLEASANT HILL CA | $8.64 | |
| 06/08 | MC-BENTLEY SCHOOL OAKLAND CA | $500.00 | |
| 06/09 | POS HOME DEPOT E 1555 40TH STREET OAKLAND CA | $194.65 | |
| 06/12 | POS BED, BATH & BEDBATH&BEYOND#0261 PLEASANT HILL CA | $11.88 | |
| 06/12 | POS BED, BATH & BEDBATH&BEYOND#0261 PLEASANT HILL CA | $23.78 | |
| 06/12 | POS VILLAGE MARK 5885 BRAODWAY TERRACE OAKLAND CA | $35.89 | |
| 06/13 | POS VILLAGE MARK 5885 BRAODWAY TERRACE OAKLAND CA | $18.38 | |
| 06/14 | POS GARDEN CLEAN 5808 COLLEGE OAKLAND CA | $46.25 | |

| | | | Checks Paid | | *Indicates check out of sequence |
|--|--|--|--|--|--|
| Check Number | Date | Amount Paid | Check Number | Date | Amount Paid |
| 1 | 05/25 | $180.00 | 152* | 06/07 | $300.00 |
| 2 | 06/01 | $255.00 | 153 | 06/07 | $90.00 |
| 3 | 06/02 | $477.41 | 156* | 06/12 | $282.50 |
| 4 | 06/08 | $806.50 | 157 | 06/14 | $250.00 |
| 6* | 06/08 | $325.00 | 158 | 06/13 | $300.00 |

Calendar Year-To-Date Overdraft/ Non-Sufficient Funds Charges
(excluding any charges which have been waived or refunded):
Overdraft charges                                    $0.00
Non-Sufficient Funds charges                         $0.00

Your Overdraft Limit as of the statement end date: $100.00
Please note that this may be changed at any time without notice (see reverse for more information). As of the statement end date, the fee for any Non-Sufficient Funds transaction, whether paid or returned, was $25.00 per transaction.

Deposits are FDIC Insured

Form CS50004B 0030008367   X

**Washington Mutual**

YOUR WAMU FREE CHECKING STATEMENT

P.O. BOX 1098
NORTHRIDGE, CA 91328-1098

This Statement Covers
From: 06/15/06
Through: 07/17/06

Need assistance?
To reach us anytime,
call 1-800-788-7000
or visit us at wamu.com

JENNIFER EHEE
6122 ACACIA AVE
OAKLAND CA 94618-1619

Take your Washington Mutual Debit Card with you when you travel! Feel comfortable knowing that no card is more accepted worldwide - just look for the Mastercard, Maestro or Cirrus logos. To find locations before you leave go online www.mastercard.com/atmlocator or call 1-800 MC-ASSIST.

## Your WaMu Free Checking Detail Information

JENNIFER EHEE      Account Number: 312-159446-5
Washington Mutual Bank, FA

The Financial Insider Network offers Unlimited Credit Reports, a Simple Will, Unlimited Telephone Legal Assistance, 25% savings on Network Attorney Fees with a 30 minute No Charge Consultation, up to 50% savings on Tax Preparation services, and much more. For more information about this program or to enroll, call (800) 964-7458.

### Your Account at a Glance

| | | | |
|---|---|---|---|
| Beginning Balance | $4,581.38 | Next Anniversary Date | 5/10/07 |
| Checks Paid | -$6,705.91 | Available OD/NSF Fee Waivers | 1 |
| Other Withdrawals | -$5,872.40 | WaMu Debit Rewards | |
| Deposits | +$10,497.84 | This statement period | $0.00 |
| Ending Balance | $2,500.91 | Total since anniversary date | $0.06 |

| Date | Description | Withdrawals (-) | Deposits (+) |
|---|---|---|---|
| 06/15 | POS VALERO 7302 605 YGNACIO VALLEY RD WALNUT CREEK CA | $74.00 | |
| 06/16 | MC-AGATHA RAINFORD OAKLAND CA | $43.50 | |
| 06/19 | ATM-CHG WCAD5989 *MT DIABLO BLVD WALNUT CREEK CA | $202.00 | |
| 06/19 | POS HOME DEPOT E 1555 40TH STREET OAKLAND CA | $314.97 | |
| 06/19 | MC-HOWARD SHOES FOR CHILD WALNUT CREEK CA | | $11.91 |
| 06/19 | MC-RADISSON HOTEL FRESNO CA | $167.64 | |
| 06/19 | MC-WOMEN OF FAITH 2 PLANO TX | $47.00 | |
| 06/19 | MC-WOMEN OF FAITH 2 PLANO TX | $16.00 | |
| 06/19 | MC-WILLIAMSSONOMA01001049 WALNUT CREEK CA | $47.63 | |
| 06/19 | MC-HOWARD SHOES FOR CHILD WALNUT CREEK CA | $102.49 | |
| 06/19 | MC-SUR LA TABLE WALNUTCRE WALNUT CREEK CA | $21.64 | |
| 06/20 | MC-DQ/ORANGE JULIUS WALNUT CREEK CA | $23.60 | |

Deposits are FDIC insured

Form C35000043 0000000823   X

**Washington Mutual**

This Statement Covers
Account Number: 312-159446-5
From: 06/15/06
Through: 07/17/06

| Date | Description | Withdrawals (-) | Deposits (+) |
|------|-------------|-----------------|--------------|
| 06/20 | MC-IFSHIN VIOLINS BERKELEY CA | $23.93 | |
| 06/20 | MC-FENTONS CREAMERY 94661 CA | $24.33 | |
| 06/21 | Customer Deposit | | $250.00 |
| 06/21 | POS SAFEWAY STO 5130 BROADWAY OAKLAND CA | $195.12 | |
| 06/21 | MC-WORLD VISION*DONATION 888-511-6580 WA | $26.00 | |
| 06/21 | MC-LONGS DRUG STORE #493 OAKLAND CA | $32.45 | |
| 06/21 | MC-LONGS DRUG STORE #493 OAKLAND CA | $43.92 | |
| 06/22 | WIRE TRANSFER DEPOSIT | | $10,000.00 |
| 06/22 | FEE: INCOMING DOMESTIC WIRE | $10.00 | |
| 06/22 | POS MARSHALLS MARSHALLS SAN LEANDRO CA | $126.06 | |
| 06/22 | MC-HOME DEPOT EXPO 1042 OAKLAND CA | $64.70 | |
| 06/22 | MC-MYFONTS.COM C/OBITSTRE CAMBRIDGE MA | $19.95 | |
| 06/23 | MC-CRATE & BARREL-406 WALNUT CREEK CA | $12.67 | |
| 06/23 | MC-PIEDMONT LIGHTING PIEDMONT CA | $53.56 | |
| 06/23 | MC-DAVID M BRIAN WALNUT CREEK CA | $19.42 | |
| 06/26 | MC-TRADER JOE'S #00000729 EMERYVILLE CA | $44.06 | |
| 06/26 | MC-OMEGA TOO, INC BERKELEY CA | $43.50 | |
| 06/26 | TOYOTA PAYMENT 0060993767021 1 | $974.50 | |
| 06/27 | MC-SHELL OIL 27441284703 MARTINEZ CA | $72.71 | |
| 06/29 | POS EAST BAY MUD PHONECHARGE INC. OAKLAND CA | $357.89 | |
| 06/29 | POS SBC CONSUMER 211 S. AKARD, ROOM 12800-750-2355 TX | $195.21 | |
| 06/29 | MC-OMEGA TOO, INC BERKELEY CA | | $43.50 |
| 06/30 | MC-OILILY #0028 PHOENIX AZ | $53.04 | |
| 06/30 | MC-OILILY #0034 NEW YORK NY | $173.95 | |
| 06/30 | MC-OILILY #0037 DENVER CO | $91.74 | |
| 06/30 | MC-WATER DELSV 800444PURE 7175605674 GA | $39.09 | |
| 06/30 | MC-WMS'WASTE MGMT WMEZPAY 866-834-2080 TX | $74.46 | |
| 06/30 | MC-COMCAST CABLE COMM 800-COMCAST CA | $125.17 | |
| 07/03 | MC-MARSHALLS #0170 PLEASANT HILL CA | | $18.48 |
| 07/03 | MC-CHEVRON 0090972 BERKELEY CA | $30.00 | |
| 07/03 | MC-OILILY #0020 PALO ALTO CA | $97.43 | |
| 07/03 | MC-OILILY #0039 COLUMBUS OH | $127.19 | |
| 07/03 | MC-OILILY #0044 SAN JOSE CA | $557.49 | |
| 07/05 | POS SAFEWAY STO 5130 BROADWAY OAKLAND CA | $130.54 | |
| 07/05 | MC-ANTHROPOLOGIE #436 SAN JOSE CA | $34.53 | |
| 07/05 | MC-URBAN OUTFITTERS #61 SAN JOSE CA | $84.44 | |
| 07/05 | MC-KUHLMAN # 29 PALO ALTO CA | $70.36 | |
| 07/05 | MC-KUHLMAN # 5 SAN JOSE CA | $80.11 | |
| 07/05 | MC-VALERO #7302 WALNUT CREEK CA | $74.00 | |
| 07/05 | MC-BEAU BIJOU SAN JOSE CA | $42.22 | |
| 07/06 | MC-OILILY #0034 NEW YORK NY | | $173.95 |
| 07/10 | MC-TENO BOCCIA XEMEX LAS VEGAS NV | $102.36 | |
| 07/12 | MC-WORLD VISION*DONATION 888-511-6580 WA | $26.00 | |
| 07/13 | MC-UCB GBRC CASHIER-DRS BERKELEY CA | $65.00 | |
| 07/13 | MC-THE JAZZ SCHOOL BERKELEY CA | $382.00 | |
| 07/13 | MC-HALF PRICE BOOKS #037 BERKELEY CA | $10.83 | |

| Checks Paid | | | | | *Indicates check out of sequence |
|-------------|------|-------------|--------------|------|-------------|
| Check Number | Date | Amount Paid | Check Number | Date | Amount Paid |
| 5 | 06/15 | $500.00 | 151* | 07/06 | $388.00 |
| 7* | 06/15 | $255.00 | 154* | 06/20 | $200.00 |

Deposits are FDIC Insured

Form C5500B4B 0000006830   X

**Washington Mutual**

Account Number: 312-159446-5**This Statement Covers**
Account Number: 312-159446-5
From: 06/15/06
Through: 07/17/06

| | | | Checks Paid | | *Indicates check out of sequence |
|---|---|---|---|---|---|
| Check Number | Date | Amount Paid | Check Number | Date | Amount Paid |
| 155 | 06/16 | $100.00 | 163 | 06/27 | $300.00 |
| 159* | 06/22 | $300.00 | 164 | 07/06 | $200.00 |
| 160 | 06/26 | $195.75 | 165 | 07/05 | $90.00 |
| 161 | 06/26 | $277.16 | 166 | 07/03 | $2,700.00 |
| 162 | 06/28 | $800.00 | 167 | 07/10 | $400.00 |

Calendar Year-To-Date Overdraft/Non-Sufficient Funds Charges
(excluding any charges which have been waived or refunded):
Overdraft charges $0.00
Non-Sufficient Funds charges $0.00

Your Overdraft Limit as of the statement end date: $100.00
*Please note that this may be changed at any time without notice (see reverse for more information). As of the statement end date, the fee for any Non-Sufficient Funds transaction, whether paid or returned, was $25.00 per transaction.*

Page 3 of 3

Deposits are FDIC Insured